653 P.2d 49

In re the MARRIAGE OF Donald Edward HINKSTON, Petitioner/Appellant,

and

Leola Jean Hinkston, Respondent/Appellee.

No. 1 CA–CIV 5193.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 12, 1982.

Donald Edward Hinkston, in pro. per.

Taylor & Petica, P.C., Scottsdale, on brief by Ron Petica, Scottsdale, for petitioner/appellant.

Levine & Jarvi by Thomas M. Shaw, Tempe, for respondent/appellee.

## OPINION

JACOBSON, Presiding Judge.

In this appeal involving a dissolution proceeding, we are asked to determine if the lower court abused its discretion concerning the amount of spousal maintenance awarded to appellee and the award of custody of the parties' son to an adult brother. We affirm in part and reverse in part.

Don Hinkston, appellant, and Leola Hinkston, appellee, were married in 1952. On September 25, 1979, a decree of dissolution was entered wherein the lower court ordered that the parties' home should be sold and the net proceeds be distributed fifty-five percent in favor of appellee (approximately $10,400.00) and forty-five percent in favor of appellant (approximately $8,500.00). Additionally, appellant was given a 1967 automobile valued at $500.00, a 1960 motorcycle valued at $100.00, a tent trailer worth approximately $25.00, and a mobile home which had zero equity. The decree ordered appellant to pay spousal maintenance in the amount of $275.00 per

month for as long as appellee is unemployed, and $125.00 per month if appellee became employed, said amounts to be paid indefinitely. Appellant was further ordered to pay $100.00 per month for the support of John, the parties' one minor child.[1] Custody of John was awarded to John's older brother, Tom Evans. Additional facts will be related as they become necessary.

■ Appellant first argues that the lower court erroneously awarded appellee spousal maintenance in the amount of $275.00 per month for an indefinite period of time. Apparently, it is appellant's position that the trial court abused its discretion regarding both the amount and the duration of the award. It is an extremely well-settled rule of law that because the trial judge is in the best position to properly tailor an award of spousal maintenance, the trial court is given broad discretion to determine what is a reasonable amount, and we will not interfere with the amount awarded unless an abuse of discretion has been shown. *Sommerfield v. Sommerfield,* 121 Ariz. 575, 592 P.2d 771 (1979); *Burkhardt v. Burkhardt,* 109 Ariz. 419, 510 P.2d 735 (1973); *Nelson v. Nelson,* 114 Ariz. 369, 560 P.2d 1276 (App.1977); *Day v. Day,* 20 Ariz.App. 472, 513 P.2d 1355 (1973).

According to the testimony presented in the lower court, at the time of the dissolution hearing appellant was not employed because he had spent approximately two months preparing the family residence for sale. However, appellant testified that previous to that he had been employed as a construction worker hanging sheetrock and as a security guard, and that he intended to return to both jobs when the work on the house was finished. It is not strenuously argued, nor could it be, that because appellant only intended to return to these jobs the lower court was not sufficiently presented with an amount of monthly income from which an award of spousal maintenance could be given. Appellant gave no

---

1. If appellee ever became employed, she was also ordered to pay child support in the amount of $35.00 per month.

indication of anything that would prevent him from returning to either job, and he testified without hesitation regarding the number of hours required by each position and the respective amounts of income he expected to earn.

Rather, appellant argues that an indefinite award of $275.00 per month for maintenance is excessive. We do not agree. Both parties testified that appellee had not worked in the past eight years,[2] and the record reflects that appellee only had a tenth grade education. Also, it is undisputed that appellee had Huntington's disease and that, according to a conciliation court recommendation, it could not be predicted how slowly or rapidly the disease would progress or how much the disease would interfere with appellee's ability to become employed.

Under these circumstances, we cannot say that the trial court abused its discretion by requiring appellant to pay maintenance of $275.00 per month for an indefinite period of time. Some of the factors to be considered by the trial court when determining the amount of maintenance are: the financial needs of the wife, the wife's ability to sustain her own needs, the husband's financial condition, and the standard of living established during the marriage. A.R.S. § 25–319; *Lindsay v. Lindsay,* 115 Ariz. 322, 565 P.2d 199 (App. 1977); *Pettibone v. Pettibone,* 22 Ariz.App. 570, 529 P.2d 724 (1974). Certainly the schedule of expenses prepared by appellee evidenced a financial need of at least $275.00 per month, even considering that appellee was not awarded custody of her son. It was also proper for the trial court to consider appellee's undisputed medical condition and the effect it might have on her future ability to sustain herself. *Pettibone v. Pettibone, supra.* Furthermore, we note that although the award falls near the high end of the scale, the amount awarded is within the guidelines adopted by the Domestic Relations Division of the Maricopa County Superior Court. And finally, when computed on an annual basis, such an amount would reasonably compare to the standard of living established by the parties during their marriage.[3]

Although the trial court is vested with broad discretion when determining a wife's need for maintenance, there still must be some support in the record for the court's determination. *Lindsay v. Lindsay, supra.* Moreover, spousal maintenance is impermissible unless a spouse meets the requirements of A.R.S. § 25–319(A) at the time of the dissolution hearing. *Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977). Accordingly, we find no justification for that part of the maintenance order which required appellant to pay $125.00 per month even if appellee became employed. Appellee testified that she wanted to work, that she had "applications in all over the place," and that she was next on the list to be hired at Motorola. There is simply nothing in the record to support the trial court's determination that if appellee obtained employment, she would need an additional $125.00 per month to sustain herself. Nor can additional alimony be predicated on mere hopes and speculative expectations. *Kennedy v. Kennedy,* 93 Ariz. 252, 379 P.2d 966 (1963); *Lindsay v. Lindsay, supra.* We therefore strike that portion of the decree requiring appellant to pay maintenance of $125.00 per month if appellee becomes employed. Since we find that the employment of the appellee is unsupported by the record, we of necessity must also strike that portion of the award which conditioned spousal maintenance in the sum of $275 per month "for as long as appellee is unemployed." The

2. There is some confusion here. Although both parties did testify that appellee had last worked eight years ago, appellee also testified that she had been employed at Casecraft approximately two and one-half years ago.

3. For the year prior to the dissolution, the parties had a net income of $4,250.00. At $275.00 per month, appellee would be given a yearly amount of $3,300.00. Even assuming a net monthly salary of $865.00 from the sheetrock position only, and including the payment of $100.00 per month child support, appellee would still be left with a yearly income of approximately $5,880.00.

amount of spousal maintenance to be paid in the future is best left to future petitions for modification based upon the normal change of circumstances criteria.

■ Lastly, appellant argues that the trial court abused its discretion by awarding custody of the parties' only minor child, John, to John's older brother.

The entire argument concerning this issue set forth in the appellant's opening brief (p. 6) is as follows:

Finally, the Court erred in awarding the minor child to an adult brother. The conciliation court report indicated the child favored Mr. Hinkston, and further, recommended liberal visitation to both Mr. and Mrs. Hinkston (thus obviating any negative aspects of Mr. Hinkston having custody). Moreover, Mr. Hinkston had temporary custody of the child up to the date of dissolution (as per an Order to Show Cause). It is respectfully submitted that the minor child would be better off with the Father, than with an adult brother, and therefore Mr. Hinkston should be awarded custody.

In fact, the evidence before the court clearly indicates that appellant is both tempermentally unfit to have custody and is unable to provide proper physical care for the child. The appellee in her answering brief supports the trial court's order granting custody to the older brother. In *LeRoy v. Odgers*, 18 Ariz.App. 499, 503 P.2d 975 (1973), Division 2 of this court held that in absence of a finding of unfitness of a parent to have custody, the trial court abuses its discretion in awarding custody in a dissolution proceedings to a non-parent. Appellant does not question the evidentiary finding that he is unfit to have custody and appellee admits she is incapable of exercising custody. Moreover, appellant does not directly put in issue the authority of the trial court to grant custody to a non-parent. Under these circumstances, we hold, at least facially, the custody order is proper.

■ For the first time in the reply brief, the appellant raises the issue that the trial court did not comply with A.R.S. § 25–328, which provides as follows:

§ 25–328. Separate trials when custody or visitation is an issue

A. In all cases when custody or visitation is a contested issue, the court shall first hear all other issues including maintenance and child support. The contested issue of custody or visitation shall not be heard at any hearing involving other issues even upon agreement of attorneys.

B. After all other issues have been decided and the amount of maintenance and child support established by the court, then the issues of custody or visitation may be heard.

Normally, issues raised for the first time in a reply brief shall not be considered by the appellate court. *Evans v. Federal Savings and Loan Insurance Corp.*, 11 Ariz.App. 421, 464 P.2d 1008 (1970). Appellant contends however that the failure to follow A.R.S. § 25–328 is jurisdictional, citing *Honsey v. Honsey*, 126 Ariz. 336, 615 P.2d 14 (App.1980) and thus may be raised at anytime. In *Honsey*, a domestic relations case in which no answering brief was filed, Division Two of this court, without any analysis, stated:

The issue of child custody was heard prior to the resolution of all the other issues including the amount of child support established by the court. While neither counsel objected to the procedure, the provisions of A.R.S. Sec. 25–328 are clearly jurisdictional.

126 Ariz. at 337, 615 P.2d at 15.

■ *Honsey* is a classic example of the mischief that can arise when courts indiscriminately use the term jurisdiction (the power to act) when what is meant is legal error (the court acted improperly). Failure to follow A.R.S. § 25–328 is clearly legal error, even non-waivable legal error, but it cannot be jurisdictional. The power of the superior court to award custody of minor children in a dissolution proceeding is derived initially from the Arizona Constitution, art. 6, § 14 and is directly conferred by A.R.S. § 25–331. A.R.S. § 25–331 is clear that jurisdiction (the power) of the superior court to act in custody matters is

derived from the domiciliary status of the child, the connection of the child and the contestants with this state, and the physical presence of the child within the state. *See generally* A.R.S. § 8–403.

The legislature has enacted an elaborate interlocking framework of legislation attempting to clarify the question of the superior court's jurisdiction in child custody matters. To envision that this framework could be overthrown simply because the court failed to follow a procedural direction of the legislature is simply not required either legally or by any public policy considerations.

Moreover, to hold that the superior court lacks jurisdiction and therefore its orders are void, simply because the procedural dictates of A.R.S. § 25–328 are not followed, possibly casts into doubt numerous custody orders of the court which are presently being followed. Again, such a result is not legislatively required.

We therefore hold that the failure to follow A.R.S. § 25–328 does not deprive the superior court of jurisdiction to enter a custody decree, but simply makes a decree not entered in conformity with the statute legally erroneous. The failure to raise this legal error in a proper manner does not require us to consider it.

That portion of the decree dissolving the marriage, dividing the property, awarding indefinite spousal maintenance of $275 per month and awarding custody to Tom Evans is affirmed. The decree is modified to strike the award to appellee of $125.00 per month in the event she becomes employed, and strike the condition that continuance of the award of $275 per month depends upon her remaining unemployed.

Affirmed as modified.

GRANT, Judge, concurring in part and dissenting in part:

I concur with the majority in affirming that portion of the decree dividing the property and awarding indefinite spousal maintenance of $275.00 per month. Similarly, I concur with the majority's modification which strikes the $125.00 per month award to appellee in the event she becomes employed. I must, however, dissent from that part of the opinion which affirms the award of child custody to Tom Evans, the minor's older brother.

The majority position that failure to comply with the procedural requirements of A.R.S. § 25–328 constitutes non-waivable legal error, and not jurisdictional infirmity, is certainly sound. However, the court's conclusion that this nonjurisdictional problem, presented for the first time in appellant's reply brief, may not be considered on appeal is fallacious.

Citing the oft-repeated rule that nonjurisdictional issues raised for the first time in an appellant's reply brief come too late to be considered, the majority concludes it may ignore the trial court's patent failure to comply with the bifurcated procedure mandated by A.R.S. § 25–328 when child custody is an issue in marital dissolution proceedings. The opinion notes that although appellant has raised the issue of custody in his opening brief, he failed to make the statutory noncompliance argument in support of his position and that this precludes him from so doing in reply to appellee's answering brief. This result is required neither by the Rules of Civil Appellate Procedure nor common logic.

An appellant's reply brief must be substantively "confined . . . to rebuttal of points urged in the appellee's brief." Rule 13(c), Rules of Civil Appellate Procedure. Issues raised for the first time in an appellant's reply brief need not be considered by the reviewing court. *United Bank v. Mesa N.O. Nelson Co.*, 121 Ariz. 438, 590 P.2d 1384 (1979); *Camelback Contractors, Inc. v. Industrial Commission*, 125 Ariz. 205, 608 P.2d 782 (App.1980). Neither rule 13(c) nor pertinent case law, however, prohibit an appellant from advancing a new argument, in a reply brief, supportive of an issue already raised in the opening brief. As the majority clearly demonstrates, the appellant has unquestionably raised the issue of child custody in his opening brief. Unmentioned by the majority, though, is that the

appellee, in her answering brief, not only responds to appellant's custody challenge but attacks his failure to cite hard legal authority for his position. In rebuttal, appellant has provided such authority. Simply put, this is an attempt by appellant to bolster his stance on the issue of custody and rebut appellee's charge that he has taken a legally untenable position.

As authority for choosing to ignore appellant's statutory argument the majority cites *Evans v. Federal Savings and Loan Insurance Corp.*, 11 Ariz.App. 421, 464 P.2d 1008 (1970). That case, and others similar in resolve, is inapposite for two main reasons. First, as above reasoned, it stands only for the proposition that new issues are improperly raised for the first time in reply, not new arguments supportive of issues already drawn into contention by the opening brief. Second, and more important, the case is based upon the authority of Rule 5(e), Rules of the Supreme Court, which was abrogated as applicable to civil appeals effective January 1, 1978. That rule, which was plainly more restrictive as to the permissible content of a reply brief provided, in pertinent part, that a reply brief "shall be confined to replying to questions either of law or fact raised by appellee's brief which were not contained in appellant's opening brief." Rule 5(e), Rules of the Arizona Supreme Court (abrogated Nov. 1, 1977, effective Jan. 1, 1978). Under this rule, a reply brief must have been limited to rebuttal of new arguments raised by the appellee's answering brief which the appellant either did not have the chance, or merely failed, to address in the opening brief. The presently applicable rule is more liberal, allowing a reply brief to contain any argument in rebuttal of a point made in an answering brief. Rule 13(c), Rules of Civil Appellate Procedure. We must assume, in the absence of contrary evidence, that the rule change was intended to broaden the scope of permissible matters addressed in the reply brief. There can be little doubt that appellant's statutory argument, first found in his reply brief, rebuts appellee's presentation of the custody issue in her answering brief. I would hold that appellant's statu-

tory noncompliance argument is properly before this court.

The statutory argument being ripe for our consideration, I then take no exception to the majority's conclusion that noncompliance with A.R.S. § 25–328 results in a legally erroneous custody decree. As the majority opinion discusses, the trial court most certainly has the power, and thus jurisdiction, to render the decree. Having done so in contravention of its statutory authority, however, the logical conclusion is that the trial court's action must be vacated and the case remanded for custody proceedings consistent with A.R.S. § 25–328.

SPECIAL CONCURRENCE:

DAVIS, Judge, Pro Tem., specially concurring:

I agree with Judge Jacobson's disposition of all issues, but I wish to add an aspect of my thinking on A.R.S. § 25–328.

§ 25–328 contains a strong directive. It is not difficult for me to see how a court desirous of according full effect to legislation would come to the conclusion reached by the *Honsey* court.

Courts have occasionally been forced to recognize that the literal terms of a statute must give way to its essential spirit, "equity", or dominant intent. See 2A *Sutherland Statutory Construction* (4th Sands Ed. 1973), §§ 54.03, 54.04, 54.06. A statute should also, if possible, be harmoniously integrated with the existing statutory framework. *See* 2A *Sutherland, supra,* § 54.08.

Recognizing as it has the ill effects of child custody litigation, *see Carlson v. Brown,* 118 Ariz. 387, 576 P.2d 1387 (App. 1978), I cannot attribute to the legislature an intent to affect jurisdiction, the operation of which would result in the invalidation of custody decrees long thought settled by the parties under usual principles of *res judicata.*

In regard to Judge Grant's dissent, in the scheme of Rule 13, the ARCAP briefing rule, the role of a reply brief is narrowly confined to rebuttal. Issues must be formulated in the opening brief. A claim of

§ 25–328 violation is logically anterior to a claim that the trial court abused its discretion in its award of custody, and cannot be included therein.

NOTE: The Honorable RICHARD M. DAVIS, a Judge pro tempore of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.