869 P.2d 176

**In re the Marriage of Barbara A. RAINWATER, Petitioner–Appellee,**

v.

**Sam L. RAINWATER, Respondent–Appellant.**

**No. 1 CA–CV 89–606.**

Court of Appeals of Arizona, Division 1, Department C.

July 1, 1993.

Review Denied Jan. 13, 1994.

Lapkin & Palmer by Janice M. Palmer, Phoenix, for petitioner-appellee.

Campana, Vieh & Strohm, P.C. by James E. Vieh, Bernard C. Owens, Scottsdale, for respondent-appellant.

## OPINION

FIDEL, Chief Judge.

Sam Rainwater ("husband") appeals from the trial court's award of spousal maintenance to Barbara Rainwater ("wife") until her death or remarriage. He argues that unless the receiving spouse, through age, disability, or lack of earning capacity, is permanently unable to become self-sustaining, Arizona law permits spousal maintenance only for a finite, transitional, rehabilitative term. We find that husband's argument gives inadequate weight to marital standard of living as a factor in maintenance awards, and to the receiving spouse's contribution to the earning ability of the paying spouse. We conclude that the trial court did not exceed its discretion in awarding indefinite maintenance in this case.

### I.

In June of 1988, wife petitioned the superior court to dissolve the parties' twenty-two-year marriage. Resolving all other issues by stipulation, the parties went to trial on the single issue of appropriate spousal maintenance for wife.

Wife through much of the parties' marriage worked full time outside the home. In the early years, she helped support husband while he worked toward an engineering degree. In later years, the trial court found, she contributed socially and emotionally to husband's career. Additionally, wife maintained the home and was primary caretaker for the parties' two children, who now are grown. After husband received his degree, his income rose substantially. In the year of the divorce and for two years prior, husband's earnings exceeded $100,000.

At the time of dissolution, wife, a forty-one-year-old secretary, was working toward a Bachelor of Arts degree, but neither party showed the extent to which her earning capacity would be enhanced by that degree. Weighing wife's needs in the context of her marital standard of living, the trial court

found that wife "would not be able to meet her reasonable needs ... nor enjoy the standard of living established during the marriage based on reasonably anticipated income from her investments and her employment." Specifically, the trial court estimated wife's after-tax income from labor and pre-tax income from investments as $20,000 per year and her reasonable needs as $41,000 per year. Finding that husband's earnings exceeded his needs, the trial court awarded wife $1900 per month for three years or until one year after completion of her B.A. degree, whichever should first occur, and $1200 per month thereafter till her death or remarriage.

Although husband argued in the trial court that wife should receive no spousal maintenance, on appeal he challenges only the duration and amount of the award. Husband argues that the trial court erred by entering an award that would allow his able-bodied former wife "to live off his labors forever." He argues that, in the absence of evidence that wife is permanently unable to become self-sustaining, Arizona public policy permits only a fixed-term award to assist her in transition to an independent life. Wife responds that our maintenance law requires a case-by-case determination, that it is flexible enough to permit an indefinite award when justified by statutorily enumerated considerations, and that those considerations support indefinite maintenance in this case.

## II.

■ Arizona law extends the trial court substantial discretion to set the amount and duration of spousal maintenance. *Hardin v. Hardin,* 163 Ariz. 501, 503, 788 P.2d 1252, 1254 (App.1990). The framework for that discretion is largely provided by Ariz.Rev. Stat.Ann. ("A.R.S.") section 25–319 (1991). First, to justify any award, the evidence must support a finding under section 25–319(A) that the receiving spouse lacks sufficient property and ability to meet reasonable living expenses. That finding is not contested in this case. Second, in deciding the duration and amount of maintenance, the trial court must balance the factors listed in section 25–319(B).[1]

■ To strike the proper balance, the trial court need not apply every factor listed in 25–319(B). In what is necessarily a case-by-case inquiry, some factors will not apply. The trial court may abuse its discretion, however, by neglecting an applicable factor. *See Elliott v. Elliott,* 165 Ariz. 128, 136, 796 P.2d 930, 938 (App.1990) (trial court abused its discretion by failing to consider the receiving spouse's contribution to the earning ability of the paying spouse and the receiving spouse's reduction in income or career opportunities for the benefit of the paying spouse).

We turn to husband's claim that the 25–319(B) balance is weighted by public policy in favor of maintenance that is transitional, rehabilitative, and limited in term. We agree up to a point. Citing *Schroeder v. Schroeder,* 161 Ariz. 316, 778 P.2d 1212 (1989), husband emphasizes the supreme court's statement that

1. The factors listed in section 25–319(B) are:
    1. The standard of living established during the marriage.
    2. The duration of the marriage.
    3. The age, employment history, earning ability and the physical and emotional condition of the spouse seeking maintenance.
    4. The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance.
    5. The comparative financial resources of the spouses, including their comparative earning abilities in the labor market.
    6. The contribution of the spouse seeking maintenance to the earning ability of the other spouse.
    7. The extent to which the spouse seeking maintenance has reduced his or her income or career opportunities for the benefit of the other spouse.
    8. The ability of both parties after the dissolution to contribute to the future educational costs of their mutual children.
    9. The financial resources of the party seeking maintenance, including marital property apportioned to such party, and such party's ability to meet his or her needs independently.
    10. The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment and whether such education or training is readily available.
    11. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.

the current aim [of spousal maintenance] is to achieve independence for both parties and to require an effort toward independence by the party requesting maintenance. The temporary award of maintenance in its present form reflects both of these values. In most cases of temporary maintenance, the key issue for the parties and the court will be whether that independence will be achieved by a good faith effort.

*Id.* at 321, 778 P.2d at 1217. This general statement is best examined in the context of the facts.

In *Schroeder,* the trial court had initially awarded wife four years of spousal maintenance, but later extended maintenance until her death or remarriage or the further order of the court. *Id.* at 317, 778 P.2d at 1213. The supreme court upheld the modified award. The court explained that maintenance awards are modifiable both in amount *and* in duration, unless the parties have expressly agreed to the contrary and the trial court has so ordered. *Id.* at 323, 778 P.2d at 1219. The wife in *Schroeder* was fifty and had worked primarily as a homemaker before her twenty-eight-year marriage ended. Although the initial award of four years' duration was "intended to support [wife's] transitional growth of earning capacity," *id.,* by the time of the petition for modification, wife had only found relatively unlucrative work as a filing clerk, and her expenses had increased to include chemotherapy treatment for cancer. Because time had disproved the trial court's apparent initial expectation that four years of transitional support would enable wife to become self-supporting, the supreme court concluded that the evidence now justified an indefinite maintenance award. *Id.*

*Schroeder* indeed recognizes the transition toward independence as a principal objective of maintenance under 25–319(B). But *Schroeder* also reaffirms the trial court's discretion to award indefinite maintenance when it appears from the evidence that independence is unlikely to be achieved. *See also In re Marriage of Hinkston,* 133 Ariz. 592, 594, 653 P.2d 49, 51 (App.1982) (trial court has discretion under appropriate circumstances to award spousal maintenance until

"death or remarriage"). Additionally, *Schroeder* shows that assessing the likelihood of a successful transition to independence requires a prediction that may vary not only from case to case, but from time to time within a case.

### III.

It does not resolve this case to recognize that maintenance orders, whenever possible, should promote a transition toward financial independence. The crux of husband's argument is that indefinite maintenance can be awarded only to a spouse who is "permanently unable to be self-sustaining."

The principal flaw in this argument is husband's failure to define "self-sustaining" by reference to any standard of living. The evidence certainly suggests that wife can be self-sustaining beyond the minimal subsistence level. Yet the trial court expressly found that wife's "reasonably anticipated income" would not meet her "reasonable needs", when those needs were determined by reference to "the standard of living established during the marriage."

Marital standard of living has long been listed by our legislature among the factors pertinent to the duration and amount of spousal maintenance. *See* A.R.S. section 25–319(B)(3) (1973), *amended by* Laws 1976, Ch. 171, § 5; Laws 1987, Ch. 195, § 1. And though Arizona courts have stated that public policy favors fixed-term maintenance as a means to promote a diligent effort to become self-sustaining, we have repeatedly cautioned that this goal "must be balanced with some realistic appraisal of the probabilities that the receiving spouse will in fact subsequently be able to support herself in some reasonable approximation of the standard of living established during the marriage." *Sommerfield v. Sommerfield,* 121 Ariz. 575, 578, 592 P.2d 771, 774 (1979) (quoting *Lindsay v. Lindsay,* 115 Ariz. 322, 328, 565 P.2d 199, 205 (App.1977), *overruled on other grounds in Schroeder*); *see also Thomas v. Thomas,* 142 Ariz. 386, 391, 690 P.2d 105, 110 (App.1984) ("the receiving spouse's ability to earn income must be considered in light of some

reasonable approximation of the standard of living established during the marriage").

In 1987, when the legislature enacted the most recent amendments to section 25–319, it expanded subsection (B) by adding, as factors bearing on the length and duration of maintenance:

6. The contribution of the spouse seeking maintenance to the earning ability of the other spouse.

7. The extent to which the spouse seeking maintenance has reduced his or her income or career opportunities for the benefit of the other spouse.

8. The ability of both parties after the dissolution to contribute to the future educational costs of their mutual children.

Laws 1987, Ch. 195, § 1. It is apparent from these changes that the legislature does not regard a 25–319(B) decision as exclusively an inquiry into the speed with which the receiving spouse might become self-supporting without maintenance. *See Elliott v. Elliott,* 165 Ariz. at 136, 796 P.2d at 938 (Factors 6 and 7 "differ from most of the other section 25–319(B) factors in that they are not based upon the parties' needs.").

■ We do not suggest that at the end of every marriage, the party of lesser earning capacity is entitled to enough support to maintain the standard of living achieved during the marriage. First of all, divorce often requires a lesser standard of living for both parties. The statute requires consideration of "[t]he ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance." A.R.S. § 25–319(B)(4). Second, there will be case-to-case variance in the degree to which the marital standard of living may be seen as a product of the marriage. For this reason, such factors as length of the marriage, the receiving spouse's contributions to the education and earning capacity of the paying spouse, and the receiving spouse's reduction in income or career opportunities for the benefit of the family home and children bear heavily on the the trial court's effort to establish an equitable award. *See* A.R.S. § 25–319(B)(2), (6), and (7).

■ In this case, the parties had a marriage of long duration, to which wife contributed financially and by assuming the role of primary caretaker for the family home and children. She contributed to husband's support as he worked toward an engineering degree, and she contributed socially and emotionally to his professional advancement once his formal education was complete. The parties had achieved a relatively high standard of living by the last years of their marriage, which the trial court properly regarded as a product of their sustained *common* efforts for 23 years. The trial court built an incentive toward independence into its maintenance award by reducing wife's monthly payment from $1900 to $1200 after the expiration of a reasonable period for getting her B.A. degree. But the trial court also concluded—and the evidence permits the conclusion—that wife could not foreseeably expect to maintain her standard of living without ongoing support from husband at a level reasonably within his ability to provide. Under all of these circumstances, we find that the trial court properly balanced the many relevant factors of 25–319(B), and we find no abuse of discretion in the trial court's award.

■ We add that our decision is strongly affected by the presumptive modifiability of spousal maintenance awards. *See Schroeder,* 161 Ariz. at 323, 778 P.2d at 1219 (spousal maintenance orders are presumed to be modifiable in amount and duration upon a showing of substantial and continuing change in circumstances affecting the purposes of the original decree). *See also* A.R.S. § 25–319(C). Because maintenance awards are modifiable, an award of maintenance until death or remarriage does not lock long-term maintenance irrefutably into place. Rather, it places the burden on the paying spouse to prove a later change in circumstances sufficiently substantial to warrant shortening the duration of the award. A fixed-term award, by contrast, places the burden on the receiving spouse to prove a change in circumstances sufficiently substantial to warrant extending the award.

The selective allocation of the burden of seeking modification is consistent with our supreme court's observation in *Schroeder* that the duration of a spousal maintenance order represents a prediction of the time when independence will occur, and that the effects of changing circumstances should not be borne solely by the receiving spouse. 161 Ariz. at 322, 778 P.2d at 1218; *see also Oppenheimer v. Oppenheimer*, 22 Ariz.App. 238, 243, 526 P.2d 762, 767 (1974) (burden of seeking modification of an award of spousal maintenance may be placed on either party, in the discretion of the trial court).

An award until death or remarriage is a prediction by the trial court that one spouse will never be able to independently approximate the standard of living established during marriage, and that the other spouse will remain financially able to contribute to the first spouse's support. When, as in this case, that finding is supported by the evidence, we find no inequity in placing the burden on the paying spouse to later prove that a substantial and continuing change of circumstances has occurred.

### IV.

We have rejected husband's challenge to indefinite maintenance in this case. We now consider husband's argument that the trial court set the amount of spousal maintenance too high.

We first consider husband's argument that the trial court erred by failing to credit wife with an item of income that she received at the time of trial, specifically, a monthly payment of $150 that the parties' youngest daughter paid to wife when living at home during a temporary break from college. Assuming that the trial court excluded this income, we find no error because the record contained evidence that the income would end and the daughter would resume her college education in the semester to come.

We next consider husband's claim that the trial court improperly attributed certain expenses to wife that were unsupported in the record. Husband objects that the trial court included among wife's expenses a contribution to the college expenses of the parties' daughters when the evidence established that husband was bearing these expenses alone. We find no error in this regard. We have earlier noted that A.R.S. section 25–319(B)(8) directs the trial court to consider the parties' ability after dissolution to contribute to the costs of education of their children. In so doing the trial court was entitled to conclude that wife would make some contribution if her income were supplemented by spousal maintenance and that husband's expenses for the education of his children would be correspondingly reduced.

Finally, husband objects that wife's expenses were overstated by the amount of $337.60 for monthly savings and retirement contributions. Husband, however, has cited no authority for the proposition that this is an illegitimate expense item. Moreover, husband included an amount for savings and retirement in his own expense statement to the trial court. Accordingly, we find no merit in this argument on appeal.

### V.

For the reasons stated above, we affirm the trial court's order of spousal maintenance.

EHRLICH, P.J., and TAYLOR, J.[2], concur.

---

**2.** Retired Judge John F. Taylor was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 20, and A.R.S. § 38–813 (1985).