869 P.2d 198

**In re the Marriage of Aurora HUGHES, Petitioner–Appellee,**

v.

**James HUGHES, Respondent–Appellant.**

No. 1 CA–CV 90–291.

Court of Appeals of Arizona, Division 1, Department C.

July 20, 1993.

Barton L. Baker, Yuma, for petitioner-appellee.

Fennemore Craig by James Powers, Timothy Berg, Janice Procter–Murphy, Phoenix, and Law Offices of Stephen J. Rouff by Stephen J. Rouff, Yuma, for respondent-appellant.

## OPINION

FIDEL, Judge.

James Hughes (husband) appeals from the trial court's order that he pay $2100 per month in spousal maintenance until the death or remarriage of Aurora Hughes (wife). Husband argues that the award was excessive in duration and asks that we limit it to thirty months. We remand because the trial court did not make findings sufficient to sustain an award of indefinite duration. We leave it to the trial court to redetermine an appropriate award in light of the circumstances at the time of remand.

### I

James and Aurora Hughes were married in 1982. Their marriage lasted seven years. They had no children together, and the children of previous marriages are grown. Wife, forty-four at dissolution, is a college graduate, but her employment experience was limited to two and a half years before this marriage as a social worker and director of a Head Start preschool program. During the marriage, wife held no job, but accompanied her husband in business-related travel and devoted considerable time and energy to entertaining business clients, who frequently stayed at the parties' home on business trips. Wife testified that she is diabetic, suffers from a thyroid condition, and often does not feel well, but offered no medical evidence that illness restricts her ability to work. She did not testify that she was unwilling to seek some work, but stated she did not know what she could do or where to start.

Under a post-nuptial agreement, husband transferred the Hughes Cattle Company, his separate property, to the community. The trial court enforced this agreement and awarded each party a 50% share. Finding nonetheless that wife lacked sufficient property and capacity to meet her reasonable living expenses, the trial court awarded her $2100 per month in spousal maintenance until "she either dies or remarries." The court offset this sum, however, against any dividends paid to wife as a Hughes shareholder.[1]

### II

Husband neither contests wife's entitlement to maintenance nor the monthly amount that the trial court chose. Rather, husband argues that *indefinite* spousal maintenance violates public policy in this case because it gives wife no incentive to attempt to meet her reasonable needs from her own labors or, indeed, to seek employment at all.

We will not disturb a maintenance award absent an abuse of discretion. *Hardin v. Hardin*, 163 Ariz. 501, 502, 788 P.2d 1252, 1253 (App.1990). Under appropriate circumstances, a trial court has discretion to award maintenance until "death or remarriage." *See In re Marriage of Hinkston*, 133 Ariz. 592, 594, 653 P.2d 49, 51 (App.1982). In *Rainwater v. Rainwater*, 177 Ariz. 500, 869 P.2d 176 (Ariz.App.1993), we recently rejected the argument that indefinite maintenance can only be awarded when the receiving spouse is "permanently unable to be self-sustaining." *Id.* at 503, 869 P.2d at 179. We recognized that public policy favors fixed-term, transitional maintenance as a means to promote a diligent effort to become financially independent. *Id.* at 503, 869 P.2d at 179; *see also Schroeder v. Schroeder*, 161 Ariz. 316, 321, 778 P.2d 1212, 1217 (1989) (the aim of spousal maintenance "is to achieve independence for both parties and to require an effort toward independence by the party requesting maintenance"). Yet we also recognized, as in earlier decisions, that this goal "must be balanced with some realistic ap-

---

1. Because the trial court awarded each party a half interest in the corporation, it did not resolve an evidentiary dispute over its value. In post-trial memoranda, wife argued that the corpora-

tion was worth at least 1.2 million dollars, and husband argued that it was worth no more than $532,000.

praisal of the probabilities that the receiving spouse will in fact subsequently be able to support herself in some reasonable approximation of the standard of living established during the marriage." *Rainwater*, 177 Ariz. at 503, 869 P.2d at 179 (quoting *Sommerfield v. Sommerfield*, 121 Ariz. 575, 578, 592 P.2d 771, 774 (1979)).

Looking to the first side of the balance, we find no explanation for the trial court's failure to require some "effort toward independence by the party requesting maintenance." *Schroeder*, 161 Ariz. at 321, 778 P.2d at 1217. The trial court gave wife no incentive to attempt employment, yet made no finding that she could not be employed. It built in no offset for anticipated earnings, yet made no finding that she lacked ability, through appropriate employment, to meet some part of her reasonable needs. *Cf. Rainwater*, 177 Ariz. at 502, 869 P.2d at 178 (the trial court not only offset wife's present earnings but also, in anticipation of a coming increase in her earning capacity, provided for a lowering of maintenance after passage of sufficient time to achieve college degree).

Wife testified in this case that she often felt unwell and was uncertain where to start back into the work force. But she offered no medical evidence that her illness is wholly disabling; nor did she testify that she feels unable to work at least part time. Indeed, wife indicated that she had put considerable time and effort into entertaining business clientele and that both she and her husband regarded these activities as beneficial to the family business. From such evidence we cannot imply a finding that wife would be unable, after a reasonable transitional period, to generate some earnings toward her own support.

On the other side of the balance, this trial court, unlike the court in *Rainwater*, recited no counterweights to the goal of promoting mutual financial independence. Our spousal maintenance statute contains many such counterweights, including marital standard of living, marital duration, contribution of the receiving spouse to the earning ability of the other, and reduction of income or career opportunities by the receiving spouse for the benefit of the other. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 25–319(B)(1), (2), (6), and (7) (1991).[2]

In *Rainwater*, we said of these considerations that "there will be case-to-case variance in the degree to which the marital standard of living may be seen as a product of the marriage. For this reason, such factors as length of the marriage, the receiving spouse's contributions to the education and earning capacity of the paying spouse, and the receiving spouse's reduction in income or career opportunities for the benefit of the family home and children bear heavily on the trial court's effort to establish an equitable

---

2. A.R.S. § 25–319(B) provides:

The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant factors, including:

1. The standard of living established during the marriage.

2. The duration of the marriage.

3. The age, employment history, earning ability and the physical and emotional condition of the spouse seeking maintenance.

4. The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance.

5. The comparative financial resources of the spouses, including their comparative earning abilities in the labor market.

6. The contribution of the spouse seeking maintenance to the earning ability of the other spouse.

7. The extent to which the spouse seeking maintenance has reduced his or her income or career opportunities for the benefit of the other spouse.

8. The ability of both parties after the the dissolution to contribute to the future educational costs of their mutual children.

9. The financial resources of the party seeking maintenance, including marital property apportioned to such party, and such party's ability to meet his or her needs independently.

10. The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment and whether such education or training is readily available.

11. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.

award. *See* A.R.S. § 25–319(B)(2), (6), and (7)." *Rainwater,* at 504, 869 P.2d at 180.

 Here, in the absence of any explanation by the trial court, we cannot find in this constellation of factors a reasonable basis for the trial court's award. The parties were of mature years when they married, their marriage was of relatively short duration, and there is no evidence that their standard of living increased, through their common efforts or otherwise, during its term. Wife made no contribution to the husband's education or earning capacity. And although she left a job that paid $16,000 annually and took no pay during the marriage for her efforts in support of her husband's business, she received a half interest in the business when the marriage reached its end. Accordingly, the record does not suggest, and the trial court did not find, that countervailing factors subordinate the objective of requiring an effort toward independence by the receiving spouse.

Had either party requested findings of fact or conclusions of law in this case, the trial court would have been obliged to specifically address each section 25–319(B) factor that the parties placed at issue. A.R.S. Rules of Civ.P., Rule 52(a); *Elliott v. Elliott,* 165 Ariz. 128, 134, 796 P.2d 930, 936 (App.1990). In the absence of such a request, such detailed findings are not required. *Id.* We conclude, however, that the trial court, at a minimum, was obliged to explain what, if any, factors in this case outweigh the public policy that ordinarily requires some effort toward independence by the party requesting maintenance. In the absence of such an explanation, the trial court's exercise of discretion is essentially unreviewable; and we have been unable to supply the missing explanation from our independent review.

For the foregoing reasons, we vacate the trial court's award of indefinite spousal maintenance, and remand for proceedings consistent with this opinion.

EHRLICH, P.J., and TAYLOR, J.,[3] concur.

---

3. Retired Judge John F. Taylor was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. art. 6, section 20 and A.R.S. § 38–813 (1985).