NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

REGINA RICHER, *Petitioner/Appellant/Cross-Appellee*,

*v.*

FRANK CORNELIUS, *Respondent/Appellee/Cross-Appellant*.

No. 1 CA-CV 25-0074 FC

FILED 01-28-2026

Appeal from the Superior Court in Coconino County
No. S0300DO202000441
The Honorable Ted Stuart Reed, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Rick L. Frimmer, JD CPA, PLLC, Sedona
By Rick L. Frimmer
*Counsel for Petitioner/Appellant/Cross-Appellee*

Walneck Law, Scottsdale
By Edward J. Walneck
*Counsel for Respondent/Appellee/Cross-Appellant*

---

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Daniel J. Kiley and Judge Cynthia J. Bailey joined.

---

**W I L L I A M S**, Judge:

¶1 The superior court issued a decree ("the Decree") dissolving the marriage of Regina Richer ("Wife") and Frank Cornelius ("Husband"). Wife appeals from provisions of the Decree denying her request for spousal maintenance, awarding reimbursement to Husband for his payment of community expenses with his sole and separate property, and denying her request for attorney's fees. Husband cross-appeals, also challenging the Decree's reimbursement award. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2 Husband and Wife married in 2004. Sixteen years later, Wife petitioned for dissolution of the marriage.

¶3 The parties stipulated to the value of some community assets and debts but failed to reach agreement on several other issues. The superior court held a three-day trial on the contested issues and entered the Decree.

¶4 In the Decree, and specific to this appeal, the superior court: (1) assigned Husband all community debt, totaling $116,793; (2) denied Wife's request for spousal maintenance, finding her eligible for an award but determining Husband cannot afford such an order; (3) found Husband owed Wife $18,295 as his one-half share of community expenses paid separately by Wife after service of the petition and Wife owed Husband $64,222 as her one-half share of community expenses paid separately by Husband after service of the petition; (4) awarded Husband reimbursement of $45,927 for his net payment of community expenses with his sole and separate property; (5) awarded each spouse $218,110.50 in community assets; (6) ordered Husband to pay Wife an equalization payment of $68,995 (having subtracted the $45,927 reimbursement award from the amount Husband otherwise owed to Wife); and (7) denied Wife's request for attorney's fees.

¶5          Wife timely appealed and Husband timely cross-appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I.      Spousal Maintenance

¶6          Wife challenges the superior court's denial of her request for spousal maintenance. She argues no evidence supports the court's finding that Husband cannot afford to pay spousal maintenance as requested.

¶7          We review a spousal maintenance award for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998). In so doing, we will affirm the superior court's order if reasonable evidence supports it. *Id.*

¶8          At trial, the parties testified at length concerning their respective financial circumstances. Wife explained she began working for Husband's "climbing hold company" in 2000 and "became [a] 50 percent owner in the company" in 2003. Throughout the marriage, until December 2, 2020, Wife worked for the community business, taking an active role in its day-to-day operations. According to Wife, the profits from the community business provided the parties with incomes and "support[ed] [their] lifestyle."

¶9          On December 2, 2020, Husband physically assaulted Wife, inflicting numerous injuries, including a concussion, a torn rotator cuff, and a broken foot. Wife brought a personal injury claim against Husband, and the parties reached a settlement agreement requiring Husband to pay Wife $200,000.

¶10         Before the assault, Wife had no physical, mental, or emotional limitations impairing her ability to work. After the assault, Wife required medical treatment, not only for her physical injuries but also for mental health concerns.

¶11         At the time of trial, Wife earned an annual income of $9,844 from working one day a week at a golf course. Comparing her limited income to Husband's reported (affidavit of financial information) annual income of $117,156, Wife requested spousal maintenance of $2,200 per month for eight years. She also requested retroactive spousal maintenance of $2,700 per month from December 2020 until August 2024 (the trial),

3

though acknowledging Husband began paying temporary spousal maintenance of $2,200 per month in April 2022.

¶12 Wife denied having savings or other property to pay for her reasonable expenses, explaining she had to rely on the settlement monies and credit before Husband began paying temporary spousal maintenance. She also testified she lacks the earning capacity to provide for her reasonable needs, stating she still suffers from physical and mental challenges that limit her ability to work. Wife recounted applying for numerous jobs but testified she never received any full-time employment offers. From her review of his reported income and expenses, Wife opined Husband could afford to pay her spousal maintenance as requested.

¶13 For his part, Husband testified his monthly expenses ($14,468) exceed his monthly income ($9,763), requiring him to spend down his savings each month to cover his bills, though noting his monthly expenses would decrease to $12,100 if the superior court awarded him the marital home. Husband testified he pays $542 each month for health insurance but acknowledged his employer reimburses him for that expense. He also explained he incurred substantial surgery-related health expenses during the two years preceding the trial and stated he anticipates having an additional surgery. Addressing Wife's request for continuing spousal maintenance, Husband testified he could not afford to pay Wife as requested, again pointing to his expenses and explaining he plans to retire in 2026 at age 65. While denying Wife's need for support—opining she can support herself and should have secured full-time employment and achieved self-sufficiency during the pendency of the dissolution proceedings—Husband testified he is "willing" to pay Wife spousal maintenance of $1,000 per month until his retirement date—describing such an order as "the amount [he] could afford" as "an extra debt."

¶14 When considering a request for spousal maintenance, the superior court must first assess the requesting spouse's eligibility. *In re Marriage of Cotter and Podhorez*, 245 Ariz. 82, 85, ¶ 7 (App. 2018); A.R.S. § 25-319(A). Only upon a finding of eligibility will the court then determine "whether to actually grant an award and, if so, the amount and duration." *Cotter*, 245 Ariz. at 85, ¶ 7; A.R.S. § 25-319(B).

¶15 Here, the superior court considered the statutory eligibility factors and found Wife eligible for spousal maintenance under A.R.S. § 25-319(A)(1)—lacking sufficient property to provide for her reasonable needs—and A.R.S. § 25-319(A)(2)—lacking the earning ability in the labor

4

market adequate to be self-sufficient. Husband does not contest these findings.

**¶16** Having found Wife met the threshold eligibility requirement, the superior court then considered the A.R.S. § 25-319(B) factors. Under that provision, the court "shall award" spousal maintenance "in an amount and for a period of time as the court deems just." A.R.S. § 25-319(B) (2018). In considering the duration and amount of maintenance, the court must consider together and weigh all relevant statutory factors. *See Rainwater v. Rainwater*, 177 Ariz. 500, 502 (App. 1993) (explaining the superior court "need not apply every factor," only those that are applicable on a "case-by-case" basis); *Cullum v. Cullum*, 215 Ariz. 352, 355, ¶ 15 (App. 2007) ("The determination by the court is done on a case-by-case basis and some factors will not apply."). In this case, the relevant factors include:

1. The standard of living established during the marriage.

2. The duration of the marriage.

3. The age, employment history, earning ability and physical and emotional condition of the spouse seeking maintenance.

4. The ability of the spouse from whom maintenance is sought to meet that spouse's needs while meeting those of the spouse seeking maintenance.

5. The comparative financial resources of the spouses, including their comparative earning abilities in the labor market.

6. The contribution of the spouse seeking maintenance to the earning ability of the other spouse.

7. The extent to which the spouse seeking maintenance has reduced that spouse's income or career opportunities for the benefit of the other spouse.

. . . .

9. The financial resources of the party seeking maintenance, including marital property apportioned to that spouse, and that spouse's ability to meet that spouse's own needs independently.

10. The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate

employment and whether such education or training is readily available.

11. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.

12. The cost for the spouse who is seeking maintenance to obtain health insurance and the reduction in the cost of health insurance for the spouse from whom maintenance is sought if the spouse from whom maintenance is sought is able to convert family health insurance to employee health insurance after the marriage is dissolved.

13. All actual damages and judgments from conduct that resulted in criminal conviction of either spouse in which the other spouse . . . was the victim.

A.R.S. § 25-319(B).

¶17 Applying these factors to this case, the superior court found: (1) "the parties lived beyond their means during their marriage," noting divorce often compels both parties to adopt a lesser standard of living; (2) the parties' marriage was of "medium duration"; (3) Wife (age 50) worked for the community business during the marriage but has not worked full-time since Husband assaulted her in December 2020; (4) Wife, having "resumed physically demanding activities such as mountain and road biking," is physically and mentally capable of "working to support herself"; (5) Husband (age 63) intends to retire in June 2026 and has reasonable monthly expenses and minimum debt service payments exceeding his monthly gross income (not including his voluntary retirement contributions, Husband's expenses exceed his income by $1,323.64 each month); (6) Husband has "comparatively much greater financial resources than Wife, including their comparative earning abilities in the labor market"; (7) "Wife possesses numerous marketable skills" but has "very limited recent experience working outside of the community business"; (8) Wife did not contribute to Husband's earning ability; (9) Wife has not reduced her income or career opportunities to benefit Husband; (10) to "partially balance" the "disproportionality" between the parties' economic positions, Husband must "pay all community debts"; (11) "Wife must work to provide for her financial needs"; (12) Wife has applied for a business degree program and believes her schooling will "require four to eight years to complete"; (13) neither party presented competent evidence of concealment, fraudulent disposition, destruction, or waste of community

property; (14) Wife receives medical insurance coverage through the Arizona Health Care Cost Containment System; and (15) Husband physically assaulted Wife and paid her $200,000 as part of a settlement agreement, but neither party submitted evidence of actual damages and judgments arising out of the assault. While noting that Husband's payment of $2,200 per month in temporary spousal maintenance from April 2022 through August 2024 (29 months) "was appropriate and necessary" to support Wife in a transition to self-sufficiency, the court further found that "Husband does not have the financial resources to continue providing Wife any further spousal maintenance."

**¶18** First, Wife contests the superior court's finding that Husband's monthly expenses and debt service payments exceed his income. She argues Husband vastly overstated his monthly expenses, double-counted some of them, and improperly included non-recurring expenses and voluntary payments in his calculation.

**¶19** "The general law in Arizona is that a party must timely present her legal theories to the trial court so as to give it an opportunity to rule properly." *Myrick v. Maloney*, 235 Ariz. 491, 495, ¶ 11 (App. 2014) (citation modified). "An appellant also has an obligation to provide transcripts and other documents necessary to consider the issues raised on appeal," and we presume missing transcripts support a superior court's ruling. *Id.*

**¶20** Apart from his testimony, Husband outlined his monthly expenses in his affidavit of financial information and in a spreadsheet, both admitted as exhibits at trial. Although Wife objected to the admission of the spreadsheet on grounds it failed to adequately delineate between community and separate expenses Husband paid since the filing of the petition, she did not otherwise contest its admissibility or accuracy.

**¶21** On appeal, Wife has provided only partial transcripts of the trial, none of which reflect any of the challenges she now raises to Husband's claimed monthly expenses. In fact, the appellate record does not reflect that Wife questioned the validity of any of Husband's claimed expenses at trial. In the absence of full trial transcripts, we presume Wife failed to raise these arguments in the superior court and therefore has waived them on appeal. *See Gutierrez*, 193 Ariz. at 350, ¶ 28 (applying waiver on appeal based on party's failure to challenge claimed monthly expense, documented in two exhibits admitted at trial, in the superior court).

¶22 Second, Wife argues Husband conceded his ability to pay spousal maintenance at trial. To support this contention, Wife cites the following exchange:

[Counsel]: Sir, it's your position that you're, you're willing to—if the Court finds that she qualifies for spousal maintenance, that [Wife] should receive spousal maintenance until you turn 65 and you retire, correct?

[Husband]: Yes.

[Counsel]: And combined total from the date she first received spousal maintenance to that date, that would be 51 months of spousal maintenance, correct?

[Husband]: Yes.

[Counsel]: Would you be then asking that this Court set as of its order that the spousal maintenance amount be at $1,000 dollars a month?

[Husband]: Yes.

[Counsel]: Do you believe that's fair?

[Husband]: I believe that's more than fair.

[Objection and discussion, prompting court to overrule the objection.]

[Counsel]: You can answer questions. Do you believe that's fair?

[Husband]: Yes.

[Counsel]: And why do you think that's, that's fair, even though you can't afford it?

[Objection and discussion, prompting court to overrule the objection.]

. . . .

[Counsel]: Why do you think that's fair even though you can't afford it?

[Husband]: I don't—obviously, I don't think it's fair or right, but it's what the Arizona law states.

[Counsel]: Well, okay, so let's back up here. The law states that, well, let's be careful here. Part of the factors here is it takes into, they look at how much you can pay. And your testimony was that you are, you do not have that amount of money on a monthly basis with your costs. And I'm trying to figure out, why are you offering and saying, *well, fine, if we're going to go ahead and she qualifies, I'm willing to say that $1,000 a month for until I retire is reasonable.* Why would you say that?

[Husband]: Because that's probably the amount that I could afford.

[Counsel]: Okay. And begrudgingly too, it would be an extra debt, correct?

[Husband]: Yes.

(Emphasis in original).

**¶23**      Read within the context of his broader trial testimony—detailing the extent to which his monthly expenses exceed his monthly income—Husband did not *admit* he could *afford* to pay Wife spousal maintenance of $1,000 per month by testifying he was *willing* to do so. Instead, he testified that if the superior court found Wife eligible for spousal maintenance, he could pay her $1,000 per month until he retires—despite his inability to afford it—by carrying the obligation as "an extra debt." In other words, Husband testified he could pay court-ordered spousal maintenance by further spending down his savings until retirement, but at that point, such an obligation would be infeasible.

**¶24**      Consistent with A.R.S. § 25-319(B), the superior court considered, among other things, the financial resources of both parties and the ability of the paying spouse to meet his own needs. The court made specific findings concerning all relevant statutory factors, and record evidence supports each of those findings. On review, we do not assess the credibility of witnesses, reweigh conflicting evidence, redetermine the preponderance of the evidence, or substitute our judgment in place of the superior court's discretion. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009); *see also Backstrand v. Backstrand*, 250 Ariz. 339, 346, ¶ 27 (App. 2020). On this record, the superior court did not abuse its discretion by denying Wife's request for spousal maintenance.

## II.      Reimbursement Award

**¶25**      Both parties challenge the superior court's reimbursement award to Husband for the net community expenses he separately paid following Wife's filing of the dissolution petition. According to Wife, the court erroneously included in its reimbursement calculation community expenses Husband separately paid in June and July 2024, despite the parties' stipulation (and a confirming court order) imposing a May 21, 2024 disclosure deadline for any reimbursement claims. Adopting Husband's accounting of his separate payment of community expenses through the disclosure deadline, Wife contends he is entitled to reimbursement of only $122,908, not $128,444 as found by the court, a difference of $5,536 that reduced the equalization amount payable to Wife by the same. On cross-appeal, Husband argues the court misapplied the law by imposing an "arbitrary" limitation on reimbursement claims rather than considering all community expenses—separately paid by *both* parties—from the date Wife filed the petition until the date of dissolution.

**¶26**      The superior court has "broad discretion in determining what allocation of property and debt is equitable under the circumstances," and we will not disturb this determination "absent a clear abuse of discretion." *In re Marriage of Inboden*, 223 Ariz. 542, 544, ¶ 7 (App. 2010); *In re Marriage of Flower*, 223 Ariz. 531, 535, ¶ 14 (App. 2010). We also review a superior court's admission or exclusion of evidence for an abuse of discretion and will not reverse unless the court made a legal error resulting in unfair prejudice. *Coleman v. Amon*, 252 Ariz. 107, 110, ¶ 5 (App. 2021). A court "may abuse its discretion if it commits an error of law in the process of exercising its discretion." *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007) (citation modified).

**¶27**      Under A.R.S. § 25-211(A)(2), "the marital community is deemed to have terminated upon the service of a petition that results in a decree of dissolution." *Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 15 (App. 2017). Accordingly, the superior court must account for post-petition payments of community expenses made from separate property in equitably dividing community property. *Id.* at ¶ 19. In other words, a party who services community debt or maintains community assets with his separate property after termination of the marital community is entitled to reimbursement for those expenditures. *Id.*

**¶28**      Relying on *Bobrow*, both Husband and Wife asserted claims for reimbursement of community expenses. Before trial, the parties

stipulated to a "final *Bobrow* disclosure deadline" of May 21, 2024, and the superior court entered an order confirming the same.

**¶29**　　　At trial, Wife presented an exhibit outlining various community bills she separately paid from December 2020 through May 2024. She testified she incurred *Bobrow* expenses of $37,504.67 and requested that Husband reimburse her $18,253 for his one-half share of those community expenses.

**¶30**　　　Husband, in turn, testified that he also paid community expenses with his sole and separate property after Wife filed for dissolution. He presented exhibits detailing his payment of community expenses from December 2020 through July 2024. Wife's attorney objected, arguing the superior court should not consider any community expenses paid after the disclosure deadline because Wife, having abided by the court's order, did not have the opportunity to introduce her expenses "for the same timeframe." Noting the trial had been continued twice, Husband's attorney countered that Husband was "simply [] trying to provide the Court the most up-to-date information regarding those *Bobrow* expenses." The superior court stated it would not consider any *Bobrow* expenses incurred after the May 2024 disclosure deadline.

**¶31**　　　Consistent with its statement at trial, the superior court confirmed in the Decree that "the *Bobrow* calculation period" ended in May 2024. Nonetheless, the court adopted Husband's reimbursement calculation, which, the parties agree, included community expenses Husband separately paid in June and July 2024.

**¶32**　　　Under *Bobrow*, a party is *entitled* to reimbursement for all community expenses paid with sole and separate property after the service of the petition until the date of dissolution. 241 Ariz. at 596, ¶ 19. Indeed, "[w]hen such payments are made, they *must* be accounted for in an equitable property distribution." *Id.* (emphasis added).

**¶33**　　　Here, neither party disputes that the other party paid community expenses with separate property after the discovery deadline. The record reflects that the superior court considered, apparently unwittingly, Husband's June and July 2024 expenditures on behalf of the community without allowing Wife to present evidence of the same, leading to an inequitable reimbursement award. Because the Decree's reimbursement calculation fails to account for *all* community expenses separately paid by *both* Husband *and* Wife from the disclosure deadline until the date of dissolution, we vacate the Decree's *Bobrow* reimbursement

provision (and related equalization payment provision) and remand to the superior court so *both* parties may present evidence of all community expenses separately paid by *either* party during the relevant period.

### III.    Attorney's Fees

**¶34**        Wife appeals the superior court's denial of her request for attorney's fees. She challenges the Decree's omission of any findings of fact to explain the basis for the ruling and, consistent with her argument below, contends the financial disparity between the parties justifies an award of attorney's fees in her favor.

**¶35**        Section 25-324 authorizes an award of attorney's fees after considering both parties' financial resources and the reasonableness of their positions throughout the proceedings. While a court must consider both the parties' resources and positions, it may grant or deny an attorney's fees request based upon either factor alone. *See Magee v. Magee*, 206 Ariz. 589, 591, ¶ 8 n.1 (App. 2004). Moreover, A.R.S. § 25-324 is permissive, granting the court discretion "to deny a fee request even after considering both statutory factors," so a financial disparity "does not mandate an award of fees." *Myrick*, 235 Ariz. at 494, ¶ 9.

**¶36**        At trial, both parties requested an award of attorney's fees. Wife testified she has no ability to pay her fees and asserted Husband "delayed this trial for several years" and refused all her settlement offers to end the litigation. Pointing to his own attorney's fees of "nearly $100,000," Husband claimed that Wife and her attorneys took unreasonable positions and unnecessarily prolonged the litigation, "cost[ing him] extra money."

**¶37**        In the Decree, the superior court referenced the relevant considerations under A.R.S. § 25-324 and then summarily denied both parties' requests for attorney's fees: "Having considered the financial resources of each party, as well as the reasonableness and unreasonableness of their respective positions throughout this litigation, IT IS ORDERED that each party shall bear their own attorney fees and costs."

**¶38**        We review a superior court's ruling on an attorney's fees request under A.R.S. § 25-324 for an abuse of discretion. *Myrick*, 235 Ariz. at 494, ¶ 6. While we generally will uphold such a ruling "if there is any reasonable basis for it," *In re Marriage of Gibbs*, 227 Ariz. 403, 410, ¶ 20 (App. 2011) (citation modified), when a party requests specific findings of fact and conclusions of law before trial, *see* Ariz. R. Fam. L. 82(a)(1), "[i]t must be clear . . . how the court actually did arrive at its conclusions." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996) (citation modified) (explaining that

when a party has requested findings of fact and conclusions of law, a reviewing court "may not affirm simply because [it] may find some possible basis for [a ruling] in the record").

¶39 In this case, Wife invoked ARFLP 82(a) before trial. Accordingly, the superior court had a duty to set forth the specific factual findings underpinning its denial of her request for attorney's fees. Because the court failed to make the requisite specific findings, we vacate the provision of the Decree denying Wife's request for attorney's fees and remand for the superior court to enter specific findings of fact.

## CONCLUSION

¶40 For the foregoing reasons, we vacate the reimbursement awards and equalization payment provisions of the Decree. We remand so the superior court may consider evidence of both parties' reimbursement claims accruing between the May 2024 disclosure deadline and the date of dissolution and recalculate the reimbursement award for each party, including any resulting equalization payment owed to one party or the other.

¶41 We also vacate the provision of the Decree denying Wife's request for attorney's fees and remand so the court may enter specific factual findings under A.R.S. § 25-324 to explain its decision. We affirm the Decree in all other respects.

¶42 Both Husband and Wife request attorney's fees on appeal under A.R.S. § 25-324. Neither party has taken an unreasonable position on appeal and we have no current information concerning the parties' financial resources. Accordingly, in the exercise of our discretion, we decline to award attorney's fees or costs to either party.

