REDMANN, Judge.
Plaintiff appeals from the dismissal ■ of his medical malpractice suit against a dermatologist who performed hair “plug” transplants. Plaintiff correctly contends that he had a contract with defendant. Plaintiff contends the contract was written, composed of a leaflet given him by defendant and a consent by himself to the procedure. This position is not unreasonable, but it is not very helpful to plaintiff’s cause both because the writings do not purport to be (in any case) the entire contract and because the leaflet’s language contains neither promise nor (so far as the evidence shows) misrepresentation. Plaintiff cites specifically questions 16 through 18 (reproduced in footnote l),[1] but we agree with the trial judge that defendant did not promise anything, to plaintiff or mislead him by those questions and answers. We simply do not agree with plaintiff’s reading of the documents involved.
*1262 Plaintiff’s factual complaints are that many of the hair plugs did not grow much hair and that he has numbness in the transplant area. He also complains of lack of informed consent as to those points but also in respect to “the scalp[’s being] cut the equivalent of a forty inch gash and . pulled from the skull in an area equivalent to one half inch wide and about three inches long for sessions of 55 transplants.”
Plaintiff introduced an expert neurologist’s testimony, based on plaintiff’s subjective reaction to pinprick and tuning fork tests on the scalp, that plaintiff had mild neurological damage consisting of numbness in a five-inch ovoid area of the scalp. But defendant’s expert dermatologist testified that, although he was president of a national society of hair transplant surgeons who shared significant knowledge, he was not aware of one case of permanent loss of sensory function of the scalp. That dermatologist also testified that he personally examined plaintiff and found no physical evidence of nerve loss of the skin. And, although he opined that patients may experience some “aberrations” in nerve regeneration in individual plugs, he evaluated plaintiff’s recovery as very good.
 As to the failure to inform of the cutting involved, we conclude that the patient has to expect cutting. In respect to the pain involved, the leaflet represented that “postoperative pain is rare” and that “discomfort that may occur is mild and is readily relieved by a mild analgesic.” Plaintiff is apparently one of the rare patients who experience pain, but the leaflet did not fail to inform him that he might.
In summary, we find the trial judge’s judgment supported by the record and we agree with his reasons for judgment.
Affirmed.

. Q. How long will the transplanted hair last?
A. Indications that it will last a lifetime or at least as long .as hair continues to grow in the region from which the transplants were taken.
Q. What percentage of grafts “take” or grow?
A. Again the answer depends upon the individual patient and the experience and skill of the operator. In our experience, almost all grafts grow hair, provided they are not damaged by manipulation, combing, accidents, or infections.
Q. How long does it take for the transplanted hair to grow?
A. Within about one month most of the transplanted hair is shed. About two months later, hair starts to grow, and continues to grow at the normal rate of about one-half inch each month or at a normal rate of growth for hair in the site from which the graft was taken.