918 P.2d 1067

**Cecelia A. KELSEY, Petitioner–Appellee,**

v.

**David P. KELSEY, Respondent–Appellant.**

No. 1 CA–CV 94–0225.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 9, 1996.

Review Denied June 19, 1996.

**50**

Mitchell & Schwartz, Ltd. by Sheldon Mitchell and Robert L. Schwartz, Phoenix, for Respondent–Appellant.

Cohen and Cotton P.C. by Judith M. Wolf, Phoenix, and Mariscal, Weeks, McIntyre & Friedlander, P.A. by Leonce A. Richard, III, Phoenix, for Petitioner–Appellee.

## OPINION

NOYES, Presiding Judge.

In this appeal from a decree of dissolution of marriage, Appellant David P. Kelsey ("husband") challenges the $725,000 valuation of his hair transplant business, the $200,000 valuation of the marital community's interest in a partnership, and the $5335 per month permanent spousal maintenance awarded to Appellee Cecelia A. Kelsey ("wife"). We reverse and remand for new trial on these and related issues.

## Background

Husband and wife married in September 1974. She was a nurse and he was a physician who later became board certified in family practice. After completing his residency in Minnesota, husband practiced family medicine in Wisconsin and wife remained employed as a nurse. The couple moved to Arizona in 1990, and wife filed a petition for dissolution of marriage in March 1992. The parties had no children, wife was fifty-four, and husband was forty-three. Wife was unemployed and had monthly expenses of $5835. Wife had Sjogren's Syndrome, an immune system disorder that caused her to quit working as a nurse in 1993 and prevented her from most other employment. The trial court found that wife's disease caused "abnormal fatigue, dry mucous membranes, memory deficits and a decreased ability to perform common arithmetic tasks." The trial court found that wife could not "perform the more complex tasks associated with duties of a registered nurse, such as calculating dosages."

Trial court financial orders in addition to those at issue on appeal included the following: Wife was awarded cash and individual retirement accounts ("IRAs") totaling $210,820; husband was awarded cash and IRAs totaling $194,579, and was ordered to pay $37,500 to wife for her attorneys' and expert fees (in addition to previous orders totaling $61,000). To equalize distribution of community property pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 25–318(A) (1991), husband was ordered to pay wife $458,392.50 in a lump sum or in installments over ten years at six percent interest.

After a hotly-contested five-day trial in July 1993, the court issued findings and conclusions in August. Husband objected, requested additional findings and moved for reconsideration. The court issued additional findings in November, entered judgment in January 1994, and husband timely appealed. We have jurisdiction pursuant to A.R.S. sections 12–2101(B) and (C) (1994).

Prior to trial, husband requested findings of fact and conclusions of law pursuant to Arizona Rules of Civil Procedure ("Rule")

52(a), which requires the trial court to set forth all facts necessary to resolve disputed issues so that this Court may examine and comprehend the basis for the trial court's rulings. *See Elliott v. Elliott*, 165 Ariz. 128, 131–32, 796 P.2d 930, 933–34 (App.1990) (finding insufficient evidence pursuant to Rule 52(a) for amount of child support and spousal maintenance awards where no mathematical basis was presented). If the trial court's basis for a conclusion is unclear, this Court may not affirm simply because we may find some possible basis for that conclusion in the record. *Id.* at 135, 796 P.2d at 937 (citing *Urban Dev. Co. v. Dekreon*, 526 P.2d 325, 328 (Alaska 1974)). Rather, when Rule 52(a) has been invoked, "It must be clear [from the findings] how the court actually did arrive at its conclusions." *Id.* We will uphold the court's findings of fact absent clear error. *E.g., In re Marriage of Berger*, 140 Ariz. 156, 161, 680 P.2d 1217, 1222 (App. 1983).

### Business Valuation

The valuation of assets is a factual determination that must be based on the facts and circumstances of each case. *In re Marriage of Molloy*, 181 Ariz. 146, 150, 888 P.2d 1333, 1337 (App.1994). The trial court has discretion to rely on various methods of valuing a professional practice, *id.*, and to qualify expert witnesses who testify regarding asset valuation. *Maricopa County v. Barkley*, 168 Ariz. 234, 239, 812 P.2d 1052, 1057 (App.1990). If an expert fails to calculate the value of an asset according to standard methodology, that failure goes to the weight of the expert's opinion, not the admissibility. *Id.*

Husband's expert, a Utah certified public accountant ("CPA") named Scott K. Stuart, opined that husband's hair transplant business was a medical practice with a value of $275,000. The trial court rejected that opinion and accepted all but $42,000 of the opinion of wife's expert, an Arizona CPA named Dennis R. Abold, that husband's hair transplant business was a service business with a value of $767,000, including $700,000 in "goodwill." Abold admitted having no authority other than himself for valuing a hair

transplant business as a service business. He also admitted using a unique methodology for his valuation: eighty percent "Discounted Cash Flow Method" and twenty percent "Formula Method." Further methodology details are unnecessary because Abold admitted that he would not have used the discounted cash flow method if he thought husband had a medical practice. But Abold decided that a hair transplant business was not a medical practice because, in his opinion, "This form of medical procedure really, to me, is non-doctor," it is "superficial surgeries," it is "not really related to the medical field." The trial court agreed:

> [T]he record reveals and the Court finds that the hair transplant clinics, in truth, bear little resemblance to a medical practice at all. This factor weighs heavily in the Court's determination that the clinics should be valued as a service business which is a basic foundation to Wife's valuation evidence.

When husband objected to this finding, the trial court explained it with additional findings:

> The court has found that [husband's] business should be valued as a service business as opposed to a medical practice. This finding is based on numerous facts established at trial, including the following:
>
> 1. Karna Lehr, who oversaw operations at the clinics as Clinic Director, assisted in transplant procedures including administering anesthesia, with little or no medical training, almost immediately after husband hired her.
>
> 2. The customers are not ill or deformed.
>
> 3. There are no billings to insurance carriers.
>
> 4. Commercial products are sold.
>
> 5. The practice does not require a significant capital investment for medical equipment.
>
> 6. No hospital or other medical facility is used.
>
> 7. No assisting physicians, nurses or other medical professionals are involved in the procedures.

8. There are no referrals from other physicians.

9. Advertising is a major expense.

10. Facility costs are minimal.

11. There are substantial travel costs.

12. There is a comparative[ly] low cost for medical malpractice insurance.

13. Husband's training time was relatively brief.

Although we do not disagree with these findings, we find clear error in the conclusion that husband had a service business. It is undisputed that husband is a licensed physician engaged in a business that applicable state laws require be owned and operated by a licensed physician. It therefore must follow that husband is engaged in the practice of medicine. Opinions such as those voiced by wife's CPA and factors such as those listed by the trial court might describe what *kind* of medical practice husband had, but they do not negate the fact that husband had a medical practice of *some* kind. Even Abold admitted that transplanting hair involves making incisions and grafts in the skin of human patients and that this is a surgical procedure, albeit a minor one. But if something went awry during this procedure, husband could be sued for medical malpractice. *See Weidig v. Tabler*, 81 Md.App. 488, 568 A.2d 868 (1990); *Dixon v. Peters*, 63 N.C.App. 592, 306 S.E.2d 477 (1983); *Kutzgar v. Yarborough*, 381 So.2d 1260 (La.Ct. App.1980); *Pound v. Medney*, 176 Ga.App. 756, 337 S.E.2d 772 (1985) (cases involving medical malpractice claims arising from hair transplant or synthetic hair implant procedures).

In *Mattes v. Commissioner of Internal Revenue*, 77 T.C. 650, 1981 WL 11299 (U.S.Tax Ct.1981), the Tax Court concluded that a hair transplant qualified as "medical care" under Section 213(e)(1) of the Internal Revenue Code of 1954 (as amended and in effect at times relevant to that case). In response to the Commissioner's argument that the surgery was cosmetic, the court found that "the character of the expense was wholly medical in nature. The hair transplant operation was a specific medical treatment to alleviate a specific condition of the body." *Id.* at 655.

Hair transplantation is a surgical procedure whereby small cylinders of hair-bearing scalp are transferred surgically from the occipital area of the scalp to the bald area. This procedure involves local anesthesia and is performed in the doctor's office. The procedure requires specialized training, and, under Maryland law, surgical hair transplants are required to be performed by a licensed physician. In fact, medical expertise is especially necessary in view of the myriad complications that could arise subsequent to such surgery such as scalp infection, scarring, osteomyelitis of the skull, and local trauma. *Id.*

In response to the Commissioner's argument that a hair transplant should be distinguished from a more complicated surgical procedure, such as a facelift, the court stated:

We believe respondent's distinction is splitting hairs. Both hair transplantation and facelifting operations affect a structure of the body. Both operations require medical expertise. Both are undergone for cosmetic reasons although the procedure itself is treatment for a physical condition of the body.

*Id.* at 656, n. 6.

We apply similar reasoning here and hold that husband's hair transplant business is a medical practice and must be evaluated as such in this domestic relations action. Because the "basic foundation" of the trial court's valuation was the opinion that husband had a service business, the valuation was fatally flawed.

We understand that husband's business was difficult to evaluate because it had a short earnings history, high cash flow, few tangible assets, and the witnesses could find no comparable sales. We agree that the trial court has considerable discretion in determining the value of a medical practice; this opinion does not limit that discretion or the admission of evidence at retrial—other than to require that husband's business be evaluated as a medical practice.

Our resolution of this issue moots husband's claim that the trial court erred by not

precluding certain testimony and evidence from Abold as a sanction for discovery violations.

### Partnership Valuation

■ Husband and wife owned fifty percent of a partnership, the main asset of which was a medical building in Minnesota that husband testified was worth only the balance due on the mortgage. Husband valued this asset at $27,000 and made an in-court offer that it be awarded to wife at that value. Wife refused the offer, explaining that she was unable to manage the partnership herself and was unwilling to work with the other partner.

The trial court initially awarded this asset to husband at a value of $118,168. After husband objected that the valuation was too high, the trial court raised the valuation to $200,000. The only arguable support for this valuation was wife's testimony. Husband argues, and we agree, that even fully crediting wife's testimony does not produce a value of $200,000 for this asset. Because no evidence supports the valuation, we reverse and remand for new trial.

### Spousal Maintenance

■ The trial court awarded wife permanent spousal maintenance of $5335 per month. Husband argues that the spousal maintenance award is not sufficiently supported by facts to withstand review. "Awards of maintenance, child support and attorneys' fees are within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." *Berger*, 140 Ariz. at 167, 680 P.2d at 1228.

A.R.S. section 25–319(A) (1991) governs the award of spousal maintenance, and section 25–319(B) provides factors the court may consider when determining the amount. The court awarded spousal maintenance based on several factors, including: 1) wife's lack of sufficient property to provide for her reasonable needs, 2) the long term (nineteen-year) duration of the marriage and the marital standard of living, 3) wife's debilitating illness and her age, 4) her contribution to husband's success, and 5) husband's $250,000 to $300,000 annual salary and ability to pay.

We find clear errors and omissions regarding certain aspects of findings 1, 2, and 4.

#### a. Wife's lack of sufficient property

■ The trial court found that wife "is entitled to an award of spousal maintenance because the property she is awarded in this Decree is insufficient to provide for her reasonable needs when viewed in light of the marital standard of living." In determining the amount of spousal maintenance, the court failed to consider the interest wife would receive on the $458,000 equalization award. If husband paid the amount in a lump sum, wife could invest it and earn interest; if husband paid the amount over time, wife would receive monthly interest. A.R.S. section 25–319(A)(1) requires that the trial court consider the "income earning potential" of property apportioned to a spouse. *See Deatherage v. Deatherage*, 140 Ariz. 317, 321, 681 P.2d 469, 473 (App.1984).

In ordering that the spousal maintenance continue indefinitely, the trial court did not consider the interest income wife would have in 1997, when approximately $200,000 in IRAs became available to her without penalty. How to weigh this fact is for the trial court to determine, but it is a "financial resource" to be considered pursuant to A.R.S. section 25–319(B)(9). *See Rainwater v. Rainwater*, 177 Ariz. 500, 502, 869 P.2d 176, 178 (App.1993).

#### b. Marital standard of living

The parties had a marriage of long duration, but their standard of living increased dramatically when husband went into the hair transplant business two years before the marriage ended. The trial court did not consider the parties' more modest standard of living during the first seventeen years of their marriage. How this factor is to be weighed is for the trial court to decide, but it is relevant to the issue of wife's reasonable needs in light of the marital standard of living. Compare this case with *Rainwater*, in which a permanent spousal maintenance award was affirmed, in part, because the parties' elevated standard of living in the years just prior to divorce was "a product of their sustained *common* efforts for 23 years."

177 Ariz. at 504, 869 P.2d at 180. As we explain below, the high standard of living at the end of the marriage here was not shown to be due to sustained common efforts.

### c. Wife's contribution to husband's earning ability

Section 25–319(B)(6) provides that the court may consider "[t]he contribution of the spouse seeking maintenance to the earning ability of the other spouse." The trial court stressed this factor by mentioning it twice in the judgment: "Husband was introduced to his current, lucrative business through Wife's efforts," and "[Wife] can claim credit for introducing her Husband to his current business at which he likely will earn significant income for many years to come."

Wife testified that her sole contribution to husband's hair transplant business—the only business at issue here—was her introduction of husband to a friend who was happy with his hair transplant. After meeting this friend, husband met the physician who did the transplant and, soon thereafter, husband was working with this physician and making lots of money in the hair transplant business. Wife's introduction of husband to the friend was a serendipitous moment that changed their fortunes, but the A.R.S. section 25–319(B)(6) contribution factor recognizes effort, not fortuity. Compare this case with *Elliott*, which also involved a physician husband, a nurse wife, a marriage of long duration, and subsection (B)(6). But in that case, wife worked as a nurse while husband finished school, then she quit her own career and worked in the home raising four children while husband was building a prosperous medical practice. 165 Ariz. at 136, 796 P.2d at 938. The trial court gave no (B)(6) recognition to wife's efforts and the appellate court found that it should have done so. *Id.* Rainwater *also illustrates a (B)(6) contribution factor:*

> In this case, the parties had a marriage of long duration, to which wife contributed financially and by assuming the role of primary caretaker for the family home and children. She contributed to husband's support as he worked toward an engineering degree, and she contributed socially

and emotionally to his professional advancement once his formal education was complete.

177 Ariz. at 504, 869 P.2d at 180.

We conclude that wife's introduction of husband to the happy hair transplant recipient was clearly not "contribution ... to the earning ability" of husband within the meaning of section 25–319(B)(6). On this record, wife was justly compensated for the consequences of that introduction when the trial court awarded her an amount of money equal to half the value of husband's hair transplant business. See *Hughes v. Hughes,* 177 Ariz. 522, 869 P.2d 198 (App.1993), which reversed a spousal maintenance award, in part, because

> Wife made no contribution to the husband's education or earning capacity. And although she left a job that paid $16,000 annually and took no pay during the marriage for her efforts in support of her husband's business, she received a half interest in the business when the marriage reached an end.

*Id.* at 525, 869 P.2d at 201.

### d. Conclusion on the spousal maintenance issue

Husband concedes that wife is entitled to spousal maintenance. We do not suggest otherwise, nor do we suggest how the trial court should weigh any of the factors discussed in this section. We only conclude that the trial court's thorough consideration of this aggressively-lawyered and complicated maintenance issue contained some clear errors and omissions, requiring retrial.

### Attorneys' Fees

Because of the pre-decree disparity between the parties' financial resources, we find no abuse of discretion in trial court orders concerning attorneys' fees and expert witness fees. Based on the amount of each parties' post-decree financial resources, we conclude that each party is able to and should bear its own attorneys' fees incurred on appeal.

## Conclusion

The dissolution of marriage is affirmed. The judgment is reversed concerning the value of husband's business, the value of the community interest in the partnership, the spousal maintenance award, and related issues such as the amount of the equalization award. The action is remanded for further proceedings consistent with this opinion.

GRANT and VOSS, JJ., concur.