NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

CARA LEE SIMONE, *Petitioner/Appellee,*

*v.*

RUSSELL SNOW THOMPSON, IV, *Respondent/Appellant.*

No. 1 CA-CV 19-0384 FC
FILED 8-4-2020

Appeal from the Superior Court in Maricopa County
No. FN 2017-092845
The Honorable Adele Ponce, Judge

**AFFIRMED**

COUNSEL

Wilkins Law Firm PLLC, Phoenix
By Amy M. Wilkins, Laura C. Brosh
*Counsel for Respondent/Appellant*

McWhorter Law Firm PLLC, Mesa
By Heath H. McWhorter
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1　　　　Russell S. Thompson, IV ("Husband") appeals the decision of the superior court assessing a value of $195,000 for his law firm and awarding Cara Lee Simone ("Wife") an offset of $97,500 in value for her community interest. For the following reasons, we affirm.

**BACKGROUND**

¶2　　　　The parties married in 2012. In 2013, Husband formed Thompson Consumer Law Group ("TCLG"), a law firm that accepted referrals from a marketing company named AFC Legal Marketing LLC ("AFC"). In May 2017, TCLG purchased AFC from Marshall Meyers for $2.28 million. Under the purchase agreement, the purchase price included "any amounts owed under the [previous] agreement between Seller, Buyer and [Thompson] dated January 22, 2016." The agreement also included an attached "Schedule [1.5] of included fees [totaling $477,843.92]," which reflected the amount owed to AFC by TCLG.

¶3　　　　In June of 2017, Wife filed a petition for legal separation that was later converted into a petition for dissolution of marriage. In the dissolution proceeding the parties retained David Cantor, a forensic accountant, to determine the value of TCLG and Law Cent (the marketing arm of TCLG) as of June 30, 2017. Cantor assigned an overall value of $195,000 to TCLG, with one of its assets being AFC, which was valued at $2.28 million. Cantor used the $2.28 million purchase price as AFC's asset value because the purchase transaction occurred within a few months of the valuation date.

¶4　　　　Husband challenged Cantor's valuation, contending Cantor should have reduced the value of AFC on TCLG's balance sheet to reflect the Schedule 1.5 fees and a $25,000 loan previously owed to Meyers, but not mentioned in the purchase agreement documentation. Husband claimed that the Schedule 1.5 fees were still owed and should be counted as a liability on TCLG's balance sheet. Cantor offered to conduct further

analysis to determine whether TCLG had received revenue for the referrals before or after the valuation date.

¶5        Husband declined to provide additional documentation to Cantor and instead retained another forensic accountant, Glenn Karlberg, to conduct a separate business valuation. Karlberg valued AFC as an asset worth $1,777,156 after deducting from the $2.28 million purchase price the $25,000 loan owed to Meyers and the Schedule 1.5 fees. Based on those assumptions, Karlberg testified at trial that the business value of TCLG on June 30, 2017, was negative $391,765.

¶6        Cantor testified there was no reference to a loan by Meyer for $25,000, and that in any event, such a loan, along with the $477,843.92 Schedule 1.5 fees, was rolled into the $2.28 million purchase price, which included a block of assets including referrals, good will, and account receivables. Cantor noted that the promissory note made no reference to a $25,000 loan or a $477,843.92 liability. Cantor also pointed out that if in fact these were liabilities at the time of purchase, Husband would have paid to purchase a company with a negative value.

¶7        Ultimately, the superior court relied on Cantor's valuation and found that "the purchase price of $2.28 million reflected the value of [AFC], including any and all liabilities." In support of its finding, the court noted that the purchase agreement provided the purchase price for AFC and explicitly stated it incorporated previous amounts owed and the Schedule 1.5 fees. Accordingly, the court determined the value of TCLG to be $195,000 and awarded Wife an offset of $97,500.

## DISCUSSION

¶8        We review for abuse of discretion the superior court's business valuation in a dissolution proceeding. *Schickner v. Schickner*, 237 Ariz. 194, 197, ¶ 13 (App. 2015). The court abuses its discretion when it "reaches a conclusion without considering the evidence, it commits some other substantial error of law . . . 'or the record fails to provide substantial evidence to support the trial court's finding'" or when the court commits an error of law. *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007) (quoting *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456 (1982)). We consider the evidence in the light most favorable to upholding the court's ruling. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998). "The valuation of assets is a factual determination that must be based on the facts and circumstances of each case." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). The superior court has the discretion to rely on various

methods of valuation. *See In re Marriage of Molloy*, 181 Ariz. 146, 152 (App. 1994). We will affirm if reasonable evidence supports the court's decision. *Id*. To the extent Husband's challenge presents an issue of contract interpretation, we review de novo. *Miller v. Hehlen*, 209 Ariz. 462, 465, ¶ 5 (App. 2005).

**¶9**        Husband claims that although the superior court correctly held that the value of AFC was $2.28 million, it erred in interpreting the purchase agreement to mean that TCLG had to book the entire $2.28 million as an asset without accounting for the Schedule 1.5 fees, which he asserts remained a liability.

**¶10**        But the agreement incorporated amounts previously owed. Cantor testified that he discussed with Husband that the $25,000 loan to Meyers was rolled into the new agreement as part of the $2.28 million purchase price. Cantor explained that in valuing AFC, "[t]o have also included the $25,000 as a second liability . . . would be double counting the $25,000 liability." As for the Schedule 1.5 fees, Cantor testified it would have been "completely improper" to pull the fees out of the $2.28 million purchase price because the liability was booked.

**¶11**        We reject Husband's argument that Cantor's opinion was not based on accepted accounting principles. Cantor testified that he did not know whether TCLG had received all the revenues associated with the Schedule 1.5 fees as of the valuation date. But he said that if those fees were to be collected after the valuation date, that would be a subsequent event recorded later on the balance sheet, and would not require an adjustment to the balance sheet as of the valuation date. That Cantor had requested additional information to determine whether an adjustment to his report was necessary, which Husband denied, does not render Cantor's testimony invalid. Cantor's view was consistent with the purchase agreement, and it was within the court's discretion to rely on Cantor's valuation methodology. *See Molloy*, 181 Ariz. at 152. Because we find substantial competent evidence to support the business valuation, we find no abuse of discretion. *See Lee v. Lee*, 133 Ariz. 118, 123 (App. 1982).

**CONCLUSION**

**¶12** For the foregoing reasons, we affirm the superior court's ruling. We award costs to Wife upon compliance with ARCAP 21. We decline to award attorneys' fees to either party.



AMY M. WOOD • Clerk of the Court
FILED: AA