NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

JAIME DION WRIGHT, *Petitioner/Appellant*,

*v.*

BRADLEY EUGENE WRIGHT, *Respondent/Appellee*.

No. 1 CA-CV 21-0613 FC
FILED 1-10-2023

Appeal from the Superior Court in Maricopa County
No. FC2018-006203
The Honorable Aryeh D. Schwartz, Judge
The Honorable Justin Beresky, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Perkins Coie LLP, Phoenix
By Paul F. Eckstein, Thomas D. Ryerson, Karl J. Worsham
*Co-Counsel for Petitioner/Appellant*

Franks Cool Houser McVey P.C., Phoenix
By Todd Franks, Robert C. Houser, Jr., Sarah M. Cool, Michael R. McVey
*Co-Counsel for Petitioner/Appellant*

Papetti Samuels Weiss McKirgan LLP, Scottsdale
By Randall S. Papetti, Jared L. Sutton
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

---

**B R O W N**, Judge:

¶1          Jaime Dion Wright ("Wife") appeals from a dissolution decree ending her marriage to Bradley Wright ("Husband"). For the following reasons, we vacate the court's ruling denying Wife's spousal maintenance claims and remand for additional findings. We affirm the remainder of the decree.

## BACKGROUND

¶2          Wife and Husband married in 2001. They share two children together, who were 16 and 19 when the decree was issued. After the couple married, Wife withdrew from the graduate program she was attending and since then she has been a stay-at-home mother. Husband is an attorney and throughout this proceeding he has been employed as a partner at Squire Patton Boggs.

¶3          Wife petitioned for dissolution in August 2018. She filed for temporary spousal maintenance two months later, asking for roughly $20,000 per month, retroactive to the date of filing. In February 2019, Wife filed an amended petition for dissolution and an amended motion for temporary orders. After a hearing, the superior court issued temporary orders directing Husband to pay Wife temporary spousal maintenance of $6,750 per month, starting March 1, 2019. The court also granted Wife exclusive use of the marital home, with financial responsibility for the mortgage, utilities, and other costs related to the home. Before the temporary orders were in place, Husband paid for the mortgage and all utilities related to the marital residence, as well as insurance, from the date of filing.

¶4          After extensive litigation, including a five-day trial, the court issued a 53-page dissolution decree in July 2021. As pertinent here, the court (1) denied Wife's request for post-decree spousal maintenance; (2) denied her request for retroactive spousal maintenance for the time between the filing of the petition and the date the temporary orders were

filed ("the gap period"); (3) ordered Wife to reimburse Husband for a portion of the community expenses he paid during the gap period; (4) declined to re-allocate a custody evaluation expense from Wife to Husband; and (5) awarded Husband $75,000 in attorneys' fees based on Wife's unreasonable positions. Wife timely appealed and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

### A.      Spousal Maintenance

**¶5**          We review spousal maintenance rulings for an abuse of discretion. *Boyle v. Boyle*, 231 Ariz. 63, 65, ¶ 8 (App. 2012). When an issue contains a question of fact and law, we accept the trial court's factual findings, unless they are clearly erroneous, and draw our own legal conclusions. *In re Marriage of Cotter*, 245 Ariz. 82, 85, ¶ 6 (App. 2018).

**¶6**          Wife argues the superior court erred as a matter of law when it found her "ineligible" for a spousal maintenance award. Courts engage in a two-step process to determine the *eligibility* and *entitlement* of a spouse for a maintenance award. *Cotter*, 245 Ariz. at 85, ¶ 7. Under A.R.S. § 25-319(A), a spouse seeking maintenance may be eligible for an award if that spouse (1) lacks sufficient property to provide for reasonable needs; (2) lacks the earning ability to be self-sufficient; (3) has a child whose circumstances make it unnecessary to require  employment outside the home; (4) has made a significant contribution to the other spouse's education or career, or has significantly reduced career opportunities to benefit the other spouse;  or (5) has had a marriage of long duration and is of an age that may preclude obtaining employment adequate to be self-sufficient.

**¶7**          If a spouse is eligible for an award, the court must then analyze, under A.R.S. § 25-319(B*)*, the parties' circumstances to determine whether a spouse is entitled to an award, as well as its amount and duration. *Cotter*, 245 Ariz. at 85, ¶ 7. Subsection B requires consideration of 13 factors, including several that overlap with the (A) factors. A.R.S. § 25-319. Thus, although a spouse may meet the eligibility criteria, a court may still determine he or she is not entitled to a maintenance award. *Cotter*, 245 Ariz. at 85-86, ¶¶ 7, 10.

**¶8**          In her proposed findings of fact and conclusions of law, Wife requested a spousal maintenance award of $9,000 per month for 8 years. Wife also provided detailed findings addressing the § 25-319 (A) and (B) factors. In his proposed findings of fact and conclusions of law, Husband

asserted that Wife should not receive any maintenance based on her "superior financial resources," and alternatively, she should be awarded $2,500 per month for 2 years. He also provided detailed findings addressing the § 25-319 (A) and (B) factors.

¶9 In the decree, the superior court analyzed the evidence relevant to each of the five statutory grounds for eligibility under § 25-319(A). It found that Wife "does not lack sufficient property . . . to provide for her reasonable needs," that she is not "unable to be self-sufficient through appropriate employment," that the marriage was neither short nor lengthy, and that Wife is "not of an age that may preclude the possibility of gaining employment adequate to be self-sufficient." The court also found that Wife "elected to assume a traditional role of a stay-at-home mother" while Husband advanced his career, and that she put her "education and presumably a career on hold to raise children," although she could have reentered the workforce after the youngest child started school. The court then "weighed the factors" and found that "Wife's access to substantial resources, the substantial amount of property she will be receiving, and her age and ability to gain employment significantly outweigh any factors that would favor an award of spousal maintenance." The court determined that "Wife has not satisfied this threshold inquiry" and was therefore "not entitled to an award of spousal maintenance."

¶10 The court's reference to a "threshold inquiry" suggests it concluded Wife was not eligible under the (A) factors. But the court then stated Wife was not "entitled" to an award. To the extent the court intended to find that Wife was not eligible for spousal maintenance on the (A) factors, the court erred because it misapplied § 25-319's two-step test when it treated the five threshold statutory grounds for eligibility as a balancing-factors test. Wife needed to meet only one of the statutory grounds to be eligible. *Cotter*, 245 Ariz. at 86, ¶ 10. The court found that Wife stayed home to raise the children while Husband advanced his career, and that she put her education and career on hold; therefore, the court implicitly found that she met at least one of the eligibility criteria. *See* A.R.S. § 25-319(A)(3), (4). Given that finding, the court needed to analyze the factors listed in § 25-319(B) to decide whether Wife should be awarded spousal maintenance, and if so, proceed to determine the amount and duration of an award. *See Cotter*, 245 Ariz. at 87, ¶ 13 (stating that if the trial court finds a spouse eligible for an award, "it must then consider the relevant factors, balance the equities between the parties, and exercise its discretion as it deems just.").

4

**¶11**          If the court intended to find that Wife was not "entitled" to spousal maintenance, its findings are insufficient. We would typically infer that the court considered all 13 factors, but Wife timely requested findings of fact and conclusions of law. *See* Ariz. R. Fam. Law P. 82(a) ("If requested before trial, the court must make separate findings of facts and conclusions of law."). Although several of the § 25-319 (A) and (B) factors overlap, without specific findings addressing all the (B) factors we are unable to discern the factual or legal basis for the court's decision to deny Wife's request for spousal maintenance. For example, the court made findings that focused on Wife's circumstances under the (A) factors but did not address Wife's and Husband's situations relative to each other as required by several of the (B) factors. *See* A.R.S. § 25-319(B)(4) (ability of spouse from whom maintenance is sought to meet own needs); (5) (comparative financial resources of the parties, including earning abilities); (8) (ability of each spouse to contribute to children's future educational costs); (11) (excessive or abnormal expenditures); (12) (health insurance costs); *Cotter*, 245 Ariz. at 87, ¶ 13.

**¶12**          Nonetheless, Husband argues the court acted within its discretion in denying Wife's request, asserting that § 25-319(A) is a permissive statute that allows a court to award maintenance but does not require an award be made. Husband acknowledges the court "appears to have agreed with Wife that she could have been 'eligible' for an award under certain criteria," but it still found that she was not entitled to an award. We acknowledge that a court has broad discretion in deciding whether to award maintenance even if a spouse meets one of the eligibility factors; however, the court must properly apply the statute and make all necessary findings when timely requested by a party under Rule 82. *See Rainwater v. Rainwater*, 177 Ariz. 500, 502 (App. 1993). Here, the court erred in balancing the (A) factors, and the record does not reflect that the court made specific findings on each of the (B) factors. Thus, we remand to allow the superior court to make additional findings on Wife's request for post-decree spousal maintenance, based on the existing record.

**¶13**          Wife also argues the court erred in denying her request for spousal maintenance during the gap period. Husband acknowledges that "[t]he analysis for gap-period spousal support is largely the same" as the analysis on post-decree spousal maintenance. Due to the overlapping considerations, we also remand for further findings (on the existing record) concerning Wife's request that her award of temporary spousal maintenance should have been applied retroactively to cover the gap period.

### B.    Gap-period Reimbursement

**¶14**        The superior court ordered that Husband was entitled to reimbursement for half of the expenses he covered during the gap period. After adjusting for offsets, Husband received a credit for $23,895.54. Wife contends the award to Husband was improper.

**¶15**        A spouse may seek reimbursement for paying community obligations while the petition for dissolution is pending, but there is no gift presumption once a petition for dissolution is filed. *Bobrow v. Bobrow*, 241 Ariz. 592, 594, ¶ 1 (App. 2017). Wife argues that *Bobrow* does not apply because the parties in that case had a prenuptial agreement under which the husband "was not obligated to pay the parties' expenses or provide any temporary support to Wife after a petition was filed." *Id.* at 596, ¶ 15. Wife reads *Bobrow* too narrowly. Although the parties there had a prenuptial agreement, that does not undermine this court's explicit directive that a spouse who voluntarily "services community debt and maintains community assets with separate property should not be penalized" and that those payments "must be accounted for in an equitable property distribution." *Id.* at ¶ 19. Wife does not dispute that Husband paid community expenses with separate property after the date of service. Nor did she present any evidence that Husband intended the payments would be considered gifts. *See id.* at ¶ 15.

**¶16**        Wife also argues the payments were "in the nature of support" and therefore she should not have to reimburse Husband. In the decree, the court stated that it was not clear from the record that Husband's payments were "in the nature of support" and it never ordered him to make those payments. Husband voluntarily serviced community debts and maintained community assets. The court did not abuse its discretion in including those payments in the equitable property distribution and ordering Wife to reimburse Husband for a portion of those payments.

### C.    Allocation of Custody Evaluation Expense

**¶17**        In contested proceedings involving legal decision-making and parenting time, a "court may order an investigation and report concerning . . . the child." A.R.S. § 25-406(A). The cost must be allocated based on the "financial circumstances of both parties." A.R.S. § 25-406(B).

**¶18**        Wife filed a motion to appoint John Scialli, M.D., to conduct a comprehensive custody evaluation. The court granted the motion, subject to Wife paying 100% of the costs; if she chose to proceed with the evaluation the costs "could be subject to reallocation at a later date." In her pretrial

statement, Wife asserted that the entire $39,500 cost (which was exclusive of Dr. Scialli's trial expenses) should be reallocated to Husband. In her proposed findings of fact and conclusions of law, Wife requested reimbursement for "all sums" she had paid Dr. Scialli, including his deposition and trial testimony. The court declined to reallocate the expense, noting that both parties have significant financial resources and rejecting Wife's assertion that the evaluation cost had to be allocated "based on the parties' comparative financial circumstances."

**¶19** Wife argues the court erred, but nothing in the statutory language requires allocation based on "comparative" financial resources, and Wife does not explain how reallocating the entire cost to Husband comports with her reading of the statute. Wife asserts that Husband "strung out" the evaluation process by objecting to the evaluation, and by taking up an excessive amount of time in interviews, but Dr. Scialli testified that review of Husband's alleged misconduct was "an expected part of this sort of evaluation."

**¶20** Wife accepted initial responsibility for paying the evaluation cost and she has not shown that the court abused its discretion in declining to reallocate the cost. *See Andaloro v. Andaloro*, No. 1 CA-CV 19-0839 FC, 2021 WL 476064, at *6-7, ¶¶ 30-31 (Ariz. App. Feb. 9, 2021) (mem. decision) (noting the superior court's "broad discretion when apportioning community property and debts" including under § 25-406).

## D. Husband's Valuation Expert

**¶21** In August 2020, Wife filed a motion in limine seeking to preclude Husband's expert, Lynton Kotzin, from testifying about the value of Husband's law practice because Kotzin failed to answer deposition questions concerning prior financial appraisals he had done for other lawyers at the same firm, citing confidentiality concerns. The court denied the motion, finding it was unreasonable for Wife to file the motion without first using the formal discovery process to request the prior appraisals from Kotzin. The court explained that Wife should have attempted to resolve a "properly established discovery dispute" before seeking court intervention, and that precluding a witness through a motion in limine was not an appropriate remedy.

**¶22** Wife argues the court erred by denying her motion. We review a court's decision on a motion in limine for an abuse of discretion. *Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 133, ¶ 33 (App. 2008). A court may rely on various methods of valuing a professional practice, and

it has discretion to "qualify expert witnesses who testify regarding asset valuation." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). "If an expert fails to calculate the value of an asset according to standard methodology, that failure goes to the weight of the expert's opinion, not the admissibility." *Id.*

**¶23** Wife argues her ability to cross-examine Kotzin was improperly restricted because the court permitted him to testify without producing evidence that went to the validity of his opinions and his credibility as an expert. Husband counters that Wife did not follow proper discovery requests and procedures. Citing *Kelsey*, he argues that any "alleged non-disclosure went only to the weight of Kotzin's testimony" and not its admissibility. *See id.*

**¶24** Wife makes no effort to distinguish *Kelsey*. *See id.* Nor does she explain how the court abused its discretion in finding that she should have used discovery procedures to try to obtain the prior appraisals. Instead, she argues she was unable to effectively cross-examine Kotzin about the validity and credibility of his opinions without those prior appraisals, but it is undisputed that she did not ask Kotzin any questions about the prior appraisals at trial, such as why he refused to provide them, or whether they impacted his methodology in the current case. And in her proposed findings of fact and conclusions of law, Wife urged the court to "draw a negative inference against adopting Mr. Kotzin's opinions" based on his failure to produce the appraisals but did not suggest the court should ignore his opinions entirely.

**¶25** Wife also fails to offer any analysis on how the court's denial of her motion in limine, even if erroneous, would have impacted the court's conclusion about Husband's law practice. *See* Ariz. R. Fam. Law P. 86 (stating that "unless justice requires otherwise," an error in admitting evidence is not grounds to disturb a judgment, and that a "court must disregard all errors and defects that do not affect any party's substantial rights"). On this record, Wife has failed to show the court abused its discretion in denying her motion in limine.

### E. Attorneys' Fees in the Superior Court

**¶26** In his proposed findings of fact and conclusions of law, Husband requested $750,000 for his reasonable attorneys' fees. Wife asserted in her proposed findings of fact and conclusions of law that she had "been forced to incur considerably more than $1,000,000 in legal fees and expenses;" she requested a fee award of $445,000.

¶27        The superior court awarded Husband $75,000 in attorneys' fees.  Wife argues that the award is not supported by the record and that the court erred in finding that Wife unreasonably expanded the proceedings and took unreasonable positions.  She further asserts the court failed to consider the relative financial positions of the parties' and contends that Husband has considerably greater financial resources available to him than she does.

¶28        The superior court is in the best position to "observe and assess the conduct of the parties" and we will not disturb an award of attorneys' fees absent an abuse of discretion.  *MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶¶ 36-38 (App. 2011).  In determining whether attorneys' fees should be awarded in a divorce proceeding, the court is required to consider "the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings."  A.R.S. § 25-324(A); *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 9 (App. 2008).  When considering the financial resources, the court may look to several factors including the relative financial disparity of the parties and the ability of the parties to pay attorneys' fees.  *Williams*, 219 Ariz. at 550, ¶ 15.  The reasonableness of a party's position is an objective standard.  *Id*. at 549, ¶ 12.  The parties' financial resources and the reasonableness of their positions are separate considerations and "an applicant need not show both a financial disparity and an unreasonable opponent in order to qualify for consideration for an award."  *Magee v. Magee*, 206 Ariz. 589, 591, ¶ 8 n.1 (App. 2004).

¶29        Although the court did not make specific numerical findings as to the level of financial resources each party had at their disposal, the court was not obligated to make such a finding, and Wife cites no authority to the contrary.  The court's duty under the statute was to "consider" the two factors, and it did so.  *See* A.R.S. § 25-324(A).  The court explained that although their respective incomes are not equal, there is "no material, substantial disparity of financial resources between the parties" and "[b]oth parties have significant financial resources."  The court recognized that Husband has a greater income than Wife, but also noted that Wife would be receiving property from the dissolution.  Wife acknowledged before trial that both parties "through their own funds or through access to broader family resources . . . [have] demonstrated the capacity to access tremendous resources."

¶30        Wife contends the court erred in finding that she took unreasonable positions, asserting all she did was "attempt to move the case along in the face of Husband's incessant obstructive tactics."  The record

shows otherwise. For example, when Husband requested a confidentiality order before signing releases for confidential health records Wife requested, she refused to acquiesce to a confidentiality order, filed a motion to compel, and relentlessly pursued production. In its March 2020 ruling, the court found that Wife's position on that issue was unreasonable and overly litigious. The court found "many of Wife's filings to be in bad faith and/or in an effort to increase the cost of litigation for Husband." It also noted that because Wife's attorney had billed more than $600,000 in the case, "the Court believes Wife has considerably more resources available to her than Husband." Later, in its ruling on Wife's motion in limine regarding Husband's valuation expert (Kotzin), the court found it was unreasonable for Wife to file the motion without having first used the formal discovery process to request the information from Kotzin. In the decree, the court found that Wife "litigated this case in a manner that unreasonably expanded the proceeding and included unreasonable positions," quoting various examples from Husband's proposed findings of fact and conclusions of law.

¶31        Wife argues the court adopted Husband's proposed findings without engaging in any independent analysis. A court may adopt the parties' proposed findings "if those findings are consistent with the ones that it reaches independently after properly considering the facts." *Elliott v. Elliott*, 165 Ariz. 128, 134 (App. 1990). Here, although the court included in the decree various examples of Wife's unreasonable positions provided by Husband, the court explained it "now had an opportunity to review the entire record. Each party litigated this case aggressively. Viewing the record as a whole, Wife litigated this case in a manner that unreasonably expanded the proceeding and included unreasonable positions." Given that explanation, together with the court's comprehensive discussion of all the issues raised by the parties, we have no trouble concluding that the court engaged in independent analysis. Wife has not shown the court abused its discretion in awarding Husband $75,000 in attorneys' fees.

### F.        Attorneys' Fees and Costs on Appeal

¶32        Wife summarily requests an award of attorneys' fees and costs she has incurred on appeal under § 25-324(A), which authorizes a fee award after consideration of the parties' financial resources and the reasonableness of their positions on appeal. Husband requests an award of attorneys' fees and costs under the same authority, asserting that "Wife's appeal is yet another example of her unreasonably expanding the proceedings, solely to inflict as much financial and emotional harm on Husband as possible." He also asserts that "[n]early all of Wife's arguments

ignore or affirmatively misrepresent the record." Wife did not respond to those assertions in her reply brief. Although we are remanding for further findings on spousal maintenance, we evaluate the parties' competing requests for fees and costs in light of the reasonableness of all the arguments presented on appeal, as well as the parties' financial resources. *See Breitbart-Napp v. Napp*, 216 Ariz. 74, 84, ¶ 39 (App. 2007) ("A.R.S. § 25–324 does not establish a prevailing party standard for awarding fees and costs."). In our discretion, we award Husband a portion of his reasonable attorneys' fees, plus taxable costs, upon compliance with ARCAP 21.

## CONCLUSION

**¶33** We vacate the portion of the superior court's decree denying Wife's requests for post-decree and gap-period spousal maintenance and remand for additional findings. We affirm the rest of the decree.



AMY M. WOOD • Clerk of the Court
FILED: AA

11