NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

LARISSA BENNINGHOFF, *Petitioner/Appellant*,

*v.*

CHAD BENNINGHOFF, *Respondent/Appellee*.

No. 1 CA-CV 23-0413 FC
FILED 5-16-2024

Appeal from the Superior Court in Maricopa County
No. FC2022-001089
The Honorable Monica Edelstein, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Schmillen Law Firm, PLLC, Scottsdale
By James R. Schmillen, Erica Leavitt
*Counsel for Petitioner/Appellant*

Colburn Hintze Maletta PLLC, Phoenix
By Robyn Barrett
*Counsel for Respondent/Appellee*

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma, and Judge Michael J. Brown joined.

**C A M P B E L L**, Judge:

**¶1** This is an appeal from the superior court's entry of a dissolution decree. We vacate and remand with respect to spousal maintenance, retroactive child support, and the valuation and allocation of certain items of community property specified below. In all other respects, the decree is affirmed.

## BACKGROUND

**¶2** Larissa Benninghoff (Mother) and Chad Benninghoff (Father) married in 2001. They have two children: Tom, born in 2003, and Jason, born in 2012.[1]

**¶3** Mother was largely a stay-at-home parent during the marriage, while Father earned multiple nursing degrees. For years Father traveled out-of-state for work and Mother took care of the children in his absence. Father managed the parties' finances. As relevant here, he opened a savings account at Bank of America (the Bank of America account) that he "earmarked" for Tom's college expenses.[2] He also participated in multiple real estate investments, including Napali Dallas Fund I, LLC (Napali Dallas); Napali Spartanburg II, LLC (Napali Spartanburg); Napali Savannah Fund I, LLC (Napali Savannah); Victorville, LLC (Victorville); and Joshua Tree, LLC (Joshua Tree). He "earmarked" the Napali Dallas investment for Jason's college fund.

**¶4** Mother petitioned for dissolution in February 2022. At that time, Jason was ten and Tom was eighteen years old, but a few months away from graduating high school. In July 2022, the parties agreed to temporary orders, including requiring Father to pay $3,500 per month "for temporary family support."

---

[1]    We use pseudonyms for the children.
[2]    This is the account ending in 6495. We do not address any of the other bank accounts divided by the decree.

¶5            The matter went to trial in March 2023. The parties agreed to the division of certain community property, including the community vehicles. They disputed the allocation of other property, including the Bank of America account and the real estate investments. They also disputed child support and spousal maintenance.

¶6            The court found Mother was not entitled to spousal maintenance and ordered Father to start paying $495 per month in child support. The court held that an equal division of community property was warranted to achieve equity. The court accepted the parties' agreement regarding the division of the community vehicles and calculated an offset for Mother. The court awarded the Bank of America account to Tom with Father as trustee, ordered the parties to hold the Napali Dallas investment as tenants in common with all proceeds to be used for Jason's college, and allocated the remaining real estate investments between the parties with an offset for Mother.

¶7            The court denied Mother's motion for relief under Ariz. R. Fam. L. P. 83. Mother timely appealed.

## DISCUSSION

¶8            Mother challenges the denial of spousal maintenance, the failure to determine retroactive child support, and several aspects of the division of the community property. We address each argument in turn.[3]

## I.        Spousal Maintenance

¶9            Spousal maintenance is governed by A.R.S. § 25-319, which provides a two-step framework. *Rainwater v. Rainwater*, 177 Ariz. 500, 502 (App. 1993). First, under A.R.S. § 25-319(A), the court must determine whether the requesting spouse is eligible for maintenance. This determination is a threshold one under which the court must consider *only* the requesting spouse's circumstances and must find the spouse eligible if *any one* of the statutory grounds is shown. *In re Marriage of Cotter*, 245 Ariz. 82, 85–86, ¶¶ 7, 10 (App. 2018). Only if eligibility is found may the court balance both parties' circumstances to determine whether to grant an award—and if so, for what amount and duration—under A.R.S. § 25-319(B). *Id.* at 85, ¶ 7. In considering a ruling on a motion for spousal maintenance, we defer to the court's factual findings (unless clearly

---

[3]        Father asks that we find Mother's arguments waived based on her reliance on unpublished decisions. We decline to find waiver.

erroneous) and independently review the legal conclusions supported by those facts. *Id.* at 85, ¶ 6 (citation omitted).

¶10 The court concluded that Mother was not entitled to an award of spousal maintenance under A.R.S. § 25-319(A).[4] Mother contends that this was error with respect to the grounds set forth in A.R.S. § 25-319(A)(1) and (4). We agree that the court erred because its factual findings are contrary to and evince misapplication of the statutory standards. *See Cotter*, 245 Ariz. at 87, ¶ 12 (holding that even where specific findings are not required, an appellate court must reverse maintenance-ineligibility determination where it is unclear whether the court applied the appropriate standard and the record does not contain reasonable supporting evidence).

¶11 A.R.S. § 25-319(A)(1) provides that a "[l]ack[ing] sufficient property, including property apportioned to the spouse, to provide for that spouse's reasonable needs" may create eligibility for maintenance. "Sufficient property" means property "of such value that the spouse would be unlikely to exhaust it in his or her lifetime." *Cotter*, 245 Ariz. at 85–86, ¶ 9. The court did not examine whether Mother had "sufficient property" —rather, it found that she was awarded the same amount of property as Father in the dissolution. That fact was not dispositive of the subsection (A)(1) inquiry, and the court erred by relying on it to determine eligibility. We vacate the spousal maintenance ruling and remand for proper consideration of Mother's eligibility under subsection (A)(1).

¶12 We also remand for proper consideration of Mother's eligibility under A.R.S. § 25-319(A)(4). Under that subsection, a spouse is eligible for maintenance if she "[h]as made a significant financial or other contribution to the education, training, vocational skills, career or earning ability of the other spouse or has significantly reduced that spouse's income or career opportunities for the benefit of the other spouse." The court found that Mother had been underemployed during the marriage to care for the children and aid in Father's career pursuits—a seemingly adequate finding for eligibility under subsection (A)(4). But the court reasoned that Mother was nonetheless ineligible for maintenance because she could be self-sufficient through appropriate employment and had had a chance to transition to such because of Father's payment of "family support" under

---

4 We reject Father's argument that the court was conducting a combined analysis of A.R.S. § 25-319(A) and A.R.S. § 25-319(B). Such an analysis would be legally improper. The court repeatedly stated that it was applying A.R.S. § 25-319(A), and its findings were directed to that portion of the statute only.

the temporary orders. That reasoning may have been enough to find Mother ineligible for maintenance under subsections (A)(2) and (A)(5). But Mother's ability to be self-sufficient had no bearing on the subsection (A)(4) question of whether she had made significant contributions to Father's education, training, vocational skills, career, or earning ability. Nor did it resolve completely that subsection's alternate inquiry of whether she had significantly reduced her employment opportunities for Father's benefit. Given the deficiencies in the court's inquiry, we remand for consideration of the additional appropriate factors.

## II.    Retroactive Child Support

**¶13**         The court made no determination that Father owed child support until the dissolution decree. As a result, the court had to calculate retroactive child support. Under A.R.S. § 25-320(B), "[i]f child support has not been ordered by a child support order and if the court deems child support appropriate, the court shall direct, using a retroactive application of the child support guidelines to the date of filing a dissolution . . ., the amount that the parents shall pay for the past support of the child and the manner in which payment shall be paid, taking into account any amount of temporary support that has been paid."

**¶14**         We interpret the statute to fulfill the legislature's intent, giving effect to each provision and avoiding absurd results. *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11 (2003). Under the statute, a retroactive child support analysis is mandatory so long as child support is ordered and there is no previous child support order—though the retroactive amount may well be minimal or even zero depending on the facts. *See Simpson v. Simpson*, 224 Ariz. 224, 225–26, ¶¶ 7–9 (App. 2010). Because the statute specifies that temporary support is part of the retroactive-support calculation, a stipulated order for temporary "family support" (a phrase not used in Title 25) does not preclude a retroactive child support award.

**¶15**         Because the court did not address retroactive child support, we remand for that calculation to be made. We express no opinion on the amount due or Father's entitlement to any offset for support already paid.

## III.    Division of Community Property

**¶16**         The superior court must divide community property "equitably, though not necessarily in kind, without regard to marital misconduct." A.R.S. § 25-318(A). To achieve an equitable division, the court may "award a sum of money to one spouse to compensate that spouse for his or her interest in community assets awarded to the other spouse."

*Martin v. Martin*, 156 Ariz. 452, 457–58 (1988). The court is "not . . . bound . . . by any per se rule of equality, but rather . . . ha[s] discretion to decide what is equitable in each case" depending on the facts. *Toth v. Toth*, 190 Ariz. 218, 221 (1997). "The valuation of assets is a factual determination that must be based on the facts and circumstances of each case." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). We defer to the court's factual findings unless the record, viewed in the light most favorable to affirming, does not contain substantial supporting evidence. *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012). Where the court has made detailed findings about the division of property and offsets, we will not infer additional offsets. *See Ringar v. Rinegar*, 231 Ariz. 85, 89, ¶ 19 (App. 2012).

### A. Vehicle-Division Offset

**¶17** Mother first challenges the offset for the division of the community vehicles. In accord with the parties' stipulation, the court ordered that Mother would receive one vehicle valued at $15,000, Father would receive two vehicles valued at $44,984 total, and Tom would receive the remaining community vehicle as a gift from both parents. The court then ordered Father to pay $9,000 as "an offset to Mother for the vehicles." Applying that offset, Mother received $24,000 (i.e., $15,000 + $9,000) while Father received $35,984 (i.e., $44,984 – $9,000), a nearly $12,000 disparity. That was error.

**¶18** The court found that "an *equal* division of community property is appropriate to achieve equity." (Emphasis added.) But the court failed to use an offset that created equality. We therefore vacate and remand the offset order for correction.

**¶19** We reject Father's argument that the inequality created by the offset was subsumed by his payment of community taxes with separate funds, and that Mother actually owes *him* an offset when the tax payment is considered. The court stated that the offset was "for the vehicles" and made no findings about the tax payment. The court's declaration provides no basis for us to conclude that the court included consideration of a tax payment in its vehicle-division calculation. *See Rinegar*, 231 Ariz. at 89, ¶ 19. Further, because Father did not cross-appeal, we will not consider his argument that he is entitled to an offset (or his argument that the court undervalued the vehicle Mother received by $100). *See* ARCAP 13(b)(2) (absent cross-appeal, appellate court may not modify judgment to enlarge appellee's or reduce appellant's rights).

### B.     Bank of America Account

**¶20**      Mother next challenges the court's allocation of the Bank of America account. Father presented evidence that he had saved for Tom's education and that the Bank of America account was "earmarked" as Tom's college fund. He explained that money from that account had already been used to pay for Tom's first year of college tuition, and that Tom wished for Father to "maintain control" of the account. Mother testified that she had been told of a college fund but knew nothing about any specific account. The court ordered that Father hold the account in trust for Tom with no offset to Mother. That was error.

**¶21**      The account was presumptively community property, and Father presented no evidence to rebut that presumption. *See Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979) ("Property acquired by either spouse during marriage is presumed to be community property, and the spouse seeking to overcome the presumption has the burden of establishing the separate character of the property by clear and convincing evidence."). The account was an ordinary savings account, and the community never gifted it to Tom or anyone else. *See Armer v. Armer*, 105 Ariz. 284, 289 (1970) ("To constitute an inter vivos gift, there must be donative intent, delivery, and the vesting of irrevocable title upon such delivery."). Even if the account was intended to benefit Tom, as a matter of law it remained community property subject to division between Mother and Father upon dissolution. And absent an enforceable agreement by the parties, the court had no authority to order either parent to provide any financial support, much less college aid, to Tom once he became an adult. *See Solomon v. Findley*, 167 Ariz. 409, 411–12 (1991). We vacate the order requiring Father to hold the Bank of America account in trust for Tom and remand for its division between the parties.

### C.     Napali Dallas Real Estate Investment

**¶22**      Mother next challenges the court's allocation of the Napali Dallas real estate investment. Father testified that the parties had "earmarked" this investment, which was funded by community property, as Jason's college fund. Mother testified that she knew about the investment, but did not know it was meant to serve as a college fund. The court ordered that Mother and Father hold the investment as joint tenants in common, with the proceeds to fund Jason's college tuition.

**¶23**      Like the Bank of America account, even if the Napali Dallas real estate investment was intended to benefit Jason, it was never transferred to him. It remained community property, and the court had no

authority to order that it be used for the child's prospective college expenses. We vacate the order awarding the Napali Dallas real estate investment's proceeds to Jason and remand for the investment's valuation and appropriate allocation.

### D.     Remaining Real Estate Investments

**¶24**     Mother next challenges the court's valuation and allocation of the remaining real estate investments. At the trial, the court received evidence that the community had invested $100,000 in Napali Spartanburg; $75,000 in Napali Savannah; "a little bit more than" $37,000 in Victorville; and $5,000 in Joshua Tree. Father testified that he believed "the Nap[a]li investments" were worth about $250,000, that he and Mother had shared returns from one of them, and that there had been cash calls on Victorville, which would "be a sketchy return."

**¶25**     At the end of the trial, the court expressed concern that the parties had not spent enough time discussing the real estate investments to permit division. The court therefore directed the parties to provide written closings "with potential citation to the admitted exhibits." Father provided a written closing that valued the Victorville and Joshua Tree investments at $37,500 and $5,000, based on the initial investment amounts, and the Napali Spartanburg and Napali Savannah investments at $98,000 and $65,308, based on the initial investment amounts minus alleged distributions. Father's valuations were similar to those presented in his pretrial statement, but he cited no evidence in either document to show the past distributions or otherwise support his position. Mother provided a written closing that urged the investments be valued based on the initial investment amounts given Father's failure to present other evidence.

**¶26**     The court found that "[t]he testimony and evidence presented at trial is insufficient for the Court to determine approximate value and transferability of each [of these] asset[s]." Assets must be valued based on evidence. *See Kelsey*, 186 Ariz. at 53. Still, the court adopted the valuations set forth in Father's closing argument and ordered that Mother would receive the Victorville and Joshua Tree investments plus a $46,500 offset.

**¶27**     We hold that the court erred by finding it lacked sufficient evidence to value the investments, but then adopting Father's assertions of value set forth in a pretrial statement and closing argument. Those assertions were not evidence. *See, e.g.*, *Bank of Yuma v. Arrow Constr. Co.*, 106 Ariz. 582, 585 (1971)*; Murray v. Murray*, 239 Ariz. 174, 179, ¶ 18 (App. 2016). We reject Father's suggestion that the pretrial statement became evidence

once he testified that he wanted the court to adopt it. We vacate the orders concerning the valuation and division of Napali Spartanburg, Napali Savannah, Victorville, and Joshua Tree, and we remand for proper valuation and allocation.

## CONCLUSION

¶28 We vacate the portions of the decree, and remand for further proceedings addressing spousal maintenance, retroactive child support, the calculation of the vehicle-division offset, the allocation of the Bank of America account, and the valuation and allocation of the real estate investments, including any appropriate monetary offsets. In all other respects, the decree is affirmed. In our discretion, we deny the parties' competing requests for attorneys' fees on appeal under A.R.S. § 25-324. We award Mother her taxable costs on appeal under A.R.S. § 12-341 pending her compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA