NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

THOMAS SCHULTZ, *Petitioner/Appellant*,

*v.*

KATHLEEN SCHULTZ, *Respondent/Appellee*.

No. 1 CA-CV 22-0406 FC
FILED 3-14-2023

Appeal from the Superior Court in Maricopa County
No. FN2021-091055
The Honorable John L. Blanchard, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

McCulloch Law Offices, PLLC, Tempe
By Diana McCulloch
*Co-Counsel for Petitioner/Appellant*

Harmon Law Office, Tempe
By Emile J. Harmon
*Co-Counsel for Petitioner/Appellant*

Burggraff Tash Levy PLC, Scottsdale
By Bryan K. Levy, Michael J. Dinn, Jr.
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**K I L E Y**, Judge:

¶1 After a trial, the superior court issued a decree (the "Decree") dissolving the marriage of Thomas Schultz ("Husband") and Kathleen Schultz ("Wife"). Husband now appeals the spousal maintenance provisions of the Decree, asserting that the court abused its discretion in (1) determining the parties' respective financial conditions, (2) failing to award him retroactive spousal maintenance for the thirteen-month pendency of the proceedings, and (3) denying his request for an award of maintenance for an indefinite term.

¶2 We reject Husband's first two arguments, finding no abuse of discretion. We reject Husband's third argument in part, finding that a recipient spouse's permanent disability does not, as a matter of law, require the superior court to award maintenance for an indefinite term. Because the Decree contains internally inconsistent statements about Husband's disability and future employment prospects, however, we vacate the maintenance award and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶3 The parties were married in 1995. Early on, they worked for the same employer, American Express. Husband was laid off in September 2001 and has not returned to the workforce since. In 2003, he returned to college, earning a bachelor's degree from Arizona State University in 2007. He did not, however, secure employment after graduating. Since 2007 or 2008, Husband has been receiving monthly disability benefits as a result of an injury he sustained in 2005.

¶4 Prior to trial, the parties entered into several agreements pursuant to Arizona Rule of Family Law Procedure ("Rule") 69, including agreements that Wife would pay Husband temporary spousal maintenance of $1,000 per month; Wife would pay Husband $24,019.47 to resolve "any and all claims regarding community debts of either party"; and Wife would

be responsible for the student loans of the parties' adult daughter while Husband would be responsible for the student loans of their adult son.

¶5            After a day-long trial in April 2022, the superior court issued the Decree in which it set forth its findings on the remaining unresolved issues. Of relevance here, the court found that Wife's "net monthly income" is "approximately $6,000/month"; that she receives annual bonuses in "a fluctuating and unpredictable" amount; and that she voluntarily supports her uncle, who lives with her without contributing toward household expenses. The court found that Husband receives a monthly disability benefit of $2,190 and that the marital assets to be awarded to him include "$147,000 for his equal share in the equity in the marital home," "approximately $400,000 from the division of retirement accounts," and an unspecified amount of "funds" from a health savings account in Wife's name.

¶6            The Decree contains contradictory statements about Husband's earning capacity. On one hand, the superior court found that Husband has a "permanent" disability stemming from his 2005 injury, that "his condition has consistently declined" since the injury, and that he "has been completely disabled and unable to work since approximately 2007 or 2008." The court went on to state, however, that it would award maintenance for a fixed term "to allow [Husband] the time that [he] needs to secure additional employment and arrange for any training [he] need[s] to secure appropriate employment."

¶7            In considering the parties' reasonable living expenses, the court found, *inter alia*, that Husband has significant monthly medical expenses. The court also found, though, that Husband has chosen a "more expensive" health insurance plan even though a less costly alternative is available that would reduce his monthly "medical and insurance costs" to "approximately $410/month."

¶8            After determining that Husband was entitled to spousal maintenance under A.R.S. § 25-319(A) and weighing the factors set forth in § 25-319(B), the superior court awarded maintenance for a period of six years in an initial amount of $2,000 per month, gradually declining to $500 per month by the sixth and final year.[1] The court denied Husband's request

_____

[1] Because the superior court entered the Decree before the most recent amendments to A.R.S. § 25-319 went into effect on September 24, 2022, we consider the prior version of the statute in reviewing the superior court's findings.

for an award of retroactive maintenance for the period of the pendency of the case, entered other orders allocating property and debt, and ordered that Husband was entitled to recover "a portion of [his] reasonable attorney fees and costs" pursuant to A.R.S. § 25-324.[2]

¶9 Husband timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶10 The parties do not dispute Husband's entitlement to an award of spousal maintenance. Instead, Husband contends, and Wife denies, that the superior court erred in its determination of the parties' respective financial conditions, in denying Husband's request for retroactive maintenance and in denying his request for maintenance of indefinite duration.

¶11 We review the superior court's order awarding spousal maintenance for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998). We view the facts and evidence in the light most favorable to upholding the superior court's ruling, and we will affirm that ruling if the evidence reasonably supports it. *Andrews v. Andrews*, 252 Ariz. 415, 419, ¶ 18 (App. 2021). Additionally, we do not reweigh evidence on appeal. *Id.* at 417, ¶ 7.

¶12 In challenging the superior court's determination of the parties' respective financial conditions, Husband argues, first, that the court erred in taking into consideration his receipt of approximately $400,000 as his share of the retirement accounts. Insisting that this Court held in *Gutierrez* "that a spouse should not have to rely on 'retirement' income or exhaust . . . a retirement account to pay their living expenses," Husband contends that the superior court should not have considered his one-half share of the retirement accounts in making its spousal maintenance award.

¶13 Husband misreads *Gutierrez*. Although *Gutierrez* holds that "a court need not require a spouse to exhaust" the principal of a retirement account "to support himself or herself," *Gutierrez*, 193 Ariz. at 348, ¶ 18, nothing in that case precludes a court from considering the income derived from retirement accounts in determining the amount of a spousal maintenance award. On the contrary, Arizona law allows a court to consider the income-producing potential of marital assets in assessing each

---

[2] The superior court subsequently awarded Husband attorney fees and costs in the amount of $15,000.

spouse's ability to meet his or her reasonable needs. A.R.S. § 25-319(A)(1) ("[T]he court may grant a maintenance order for either spouse" if the court "finds that the spouse seeking maintenance . . . [l]acks sufficient property, *including property apportioned to the spouse*, to provide for that spouse's reasonable needs.") (emphasis added); *see also Hughes v. Hughes*, 177 Ariz. 522, 524-25 (App. 1993) (holding that trial court's factual findings were insufficient to justify award of maintenance of indefinite duration, in part because, although wife was not employed during the marriage and her employment prospects were uncertain, "she received a half interest" in "her husband's business"). The superior court properly considered Husband's share of the parties' retirement accounts in determining the amount of spousal maintenance.

¶14        Husband asserts that, in determining the amount of the maintenance award, the superior court underestimated his reasonable living expenses. Among other things, he asserts, the court erred in finding he enrolled in an unnecessarily expensive health insurance plan when a more affordable one was available, insisting that the plan he chose will prove cheaper in the long run after taking into account co-pays, deductibles, and uncovered medication expenses.

¶15        Relatedly, Husband asserts that the Decree understates Wife's net income because the superior court improperly ignored her discretionary (and, Husband suggests, excessive) expenses. Wife could afford to pay more in spousal support, he asserts, if she economized in various ways, including by moving to a less expensive residence, discontinuing her financial support of her uncle, reducing her monthly retirement contributions, and "cancel[ling] her life insurance." According to Husband, the superior court's assessment of the reasonableness of each party's living expenses unfairly allows Wife, but not Husband, to "continue to enjoy the standard of living the parties shared throughout the marriage."

¶16        Husband's suggestion that the superior court erred in failing to craft a maintenance award in a manner that allows both parties to maintain their pre-dissolution standard of living has no support in the law. On the contrary, courts have long recognized that "divorce often requires a lesser standard of living for both parties." *Rainwater v. Rainwater*, 177 Ariz. 500, 504 (App. 1993). Moreover, the record does not support Husband's complaint that Wife's standard of living has been unaffected by the divorce. As the superior court noted, although Wife retained the former marital residence, her monthly mortgage payment "more than doubled after she refinanced the home to pay Husband his share of the equity."

¶17          In any event, a review of the Decree makes clear that the superior court considered all evidence relevant to the parties' reasonable financial needs, methodically addressing the evidentiary support for each of the factors set forth in A.R.S. § 25-319(B). In reviewing the award, we will not reweigh the evidence bearing on the reasonableness of the parties' living expenses. Because reasonable evidence supports the superior court's evaluation of the § 25-319(B) factors, we find no abuse of discretion here. *See Boyle v. Boyle*, 231 Ariz. 63, 66, ¶ 13 (App. 2012).

¶18          Noting that subsection 8 of § 25-319(B) requires the court to consider the spouses' ability "to contribute to the future educational costs of their mutual children," Husband faults the superior court for failing to consider his ability to afford the $300-per-month cost of repaying the student loans of the parties' adult son.

¶19          As Wife correctly points out, however, Husband and Wife entered into the Rule 69 agreement pursuant to which Husband agreed to be responsible for the student loans of the parties' adult son while Wife was responsible for the student loans of their adult daughter. Because Husband has not shown, or even alleged, that the Rule 69 agreement was invalid, he is bound by its terms. *See* Ariz. R. Fam. Law P. 69(c). Increasing Wife's spousal maintenance award to offset the cost to Husband of their son's student loans would run counter to the parties' Rule 69 agreement by, in effect, shifting onto Wife the financial burden of those student loans. The superior court cannot be said to have abused its discretion when it refused to circumvent the parties' Rule 69 agreement by shifting onto Wife the financial burden of a debt Husband agreed to assume.

¶20          Husband asserts that, in determining the parties' financial condition, the superior court failed to take into consideration the savings Wife will realize on her monthly health insurance premiums now that Husband is no longer covered on her policy. Likewise, he asserts, the court improperly failed to consider all of his monthly expenses, including, for example, the $500 to $800 he spends each month on the "medical marijuana" he "must use . . . to alleviate pain." Because Husband has not supplied a transcript, we are unable to determine if he raised these arguments at trial or presented any evidence to support them. We find that these arguments entitle Husband to no relief. ARCAP 11(c)(1); *Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995) ("A party is responsible for making certain the record on appeal contains all transcripts," and "we assume [missing transcripts] would support the court's findings and conclusions.").

¶21 Husband argues, next, that the superior court abused its discretion in failing to award him retroactive maintenance for the thirteen-month pendency of the proceedings. Acknowledging that he received temporary maintenance of $1,000 per month, he asserts that the superior court should have awarded retroactive maintenance at a "minimum" amount of $2,000 per month, with Wife receiving an offset for the temporary maintenance she already paid. During the proceedings, he explains, he "serviced the parties' joint debts," and so is "entitled" to be compensated for those payments by an award of retroactive maintenance.

¶22 Again, Husband and Wife entered into a pretrial Rule 69 agreement pursuant to which Wife paid Husband $24,019.47 to resolve all claims relating to the parties' community debt. Because Husband agreed to accept $24,109.47 from Wife to satisfy her community debt obligation, the superior court did not abuse its discretion in denying Husband's request for additional reimbursement for community debt from Wife in the form of retroactive maintenance.

¶23 Finally, Husband argues that the superior court abused its discretion in denying his request for an award of maintenance for an indefinite term. Because the court "specifically found" that he is "permanently disabled," he asserts, the court "was obligated, as a matter of law, to make the spousal maintenance award[] permanent."

¶24 As noted above, the court found Husband "completely disabled and unable to work," yet awarded fixed-term, gradually-declining maintenance for the express purpose of "allow[ing] [Husband] the time that [he] needs to secure additional employment and arrange for any training [he] need[s] to secure appropriate employment." The Decree's inconsistent statements about Husband's earning capacity require that we vacate the spousal maintenance award and remand the matter for the court to reconcile these statements and make a new spousal maintenance determination based on the existing record. *See Ortiz v. Diejuez*, 1 CA-CV 18-0606 FC, 2020 WL 1684019, at *6, ¶ 28 (Ariz. App. Apr. 7, 2020) (mem. decision) (vacating spousal maintenance award due to superior court's inconsistent factual findings about paying spouse's income).

¶25 Although the spousal maintenance award must be vacated, we nonetheless address the merits of Husband's claim to entitlement to spousal maintenance for an indefinite term because it is an issue of law likely to recur on remand. *Buckholtz v. Buckholtz*, 246 Ariz. 126, 131, ¶ 17 (App. 2019) (addressing issues or arguments that "may occur on remand").

¶26 Case law holds that an award of spousal maintenance for an indefinite term is inappropriate where the recipient spouse is presently unable to maintain employment due to a disability that is temporary in nature. *Huey v. Huey*, 253 Ariz. 560, 563, ¶¶ 8-10 (App. 2022). A temporary disability, after all, does not "permanently prevent" the recipient spouse from ever returning to the workforce. *See id*. at ¶ 10.

¶27 Contrary to Husband's assertion, however, it does not follow that a *permanent* disability *necessarily* entitles the recipient spouse to a maintenance award of indefinite duration. Although the superior court has the discretion "to award indefinite maintenance when it appears from the evidence that independence is unlikely to be achieved," *Rainwater*, 177 Ariz. at 503, we have never held that it is *required* to do so. Promoting the financial independence of both parties is a central purpose of spousal maintenance, and that purpose is best served by placing durational limits on maintenance awards. *See Schroeder v. Schroeder*, 161 Ariz. 316, 321 (1989) ("[T]he current aim [of spousal maintenance awards] is to achieve independence for both parties and to require an effort toward independence by the party requesting maintenance. The temporary award of maintenance in its present form reflects both of these values."); *Hughes*, 177 Ariz. at 523 ("[P]ublic policy favors fixed-term, transitional maintenance as a means to promote a diligent effort to become financially independent.").

¶28 Further, we see no basis for Husband's suggestion that financial independence is "virtually impossible" for him to achieve. Those unable to maintain employment due to permanent disability may nonetheless be able to provide for their own reasonable needs in other ways, including by relying on benefit payments and the income generated from financial accounts and other assets. *See Kelsey v. Kelsey*, 186 Ariz. 49, 53 (App. 1996) (reversing maintenance award where, "[i]n ordering that the spousal maintenance continue indefinitely, the trial court did not consider the interest income wife would" receive from financial accounts awarded to her). If, on remand, the superior court determines that Husband is in fact permanently disabled and that no additional training or education would enable him to re-enter the workforce, the court must nonetheless consider other sources of support available to him in determining the appropriate duration and amount of a maintenance award.

¶29 Husband and Wife both seek attorney fees and costs on appeal under A.R.S. § 25-324 and Arizona Rule of Civil Procedure 21. After considering the reasonableness of both parties' positions and their respective, disparate financial resources, we decline Husband and Wife's competing requests for attorney fees and costs in the exercise of our

discretion on appeal. *See Myrick v. Maloney*, 235 Ariz. 491, 496, ¶ 16 (App. 2014).

## CONCLUSION

**¶30**        We conclude that, while the superior court did not abuse its discretion in determining the parties' respective financial positions and in declining to award retroactive spousal maintenance, the inconsistent statements in the Decree regarding Husband's ability to maintain employment require us to vacate the spousal maintenance award and remand for further proceedings consistent with this decision. The remaining provisions of the Decree are affirmed.

